1  Joshua H. Haffner, SBN 188652
   (jhh@haffnerlawyers.com)
2  Graham G. Lambert, Esq. SBN 303056
   gl@haffnerlawyers.com
3  **HAFFNER LAW PC**
   445 South Figueroa Street, Suite 2625
4  Los Angeles, California 90071
   Telephone: (213) 514-5681
5  Facsimile: (213) 514-5682

6  Bart I. Ring, SBN:
   (bartiring@aol.com)
7  **THE RING LAW FIRM APLC**
   5550 Topanga Canyon Blvd., Suite 200
8  Woodland Hills, California 91367
   Telephone: (818) 835-5842
9  Facsimile: (818) 587-9292

10 Attorneys for Plaintiff Elizabeth M.
   Byrnes, Inc., and all others similarly
11 situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH M. BYRNES, INC., a corporation, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOUNTAINHEAD COMMERCIAL CAPITAL, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. FRAUDULENT CONCEALMENT;**<br><br>**2. UNFAIR BUSINESS PRACTICES;**<br><br>**3. FALSE ADVERTISING.**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Elizabeth M. Byrnes, Inc. ("Plaintiff") is informed and believe, and on that basis allege, as follows:

**NATURE OF THE ACTION**

1. This is a California state-wide class action for fraudulent concealment, unfair business practices, and false advertising arising out of Defendant Fountainhead Commercial Capital, LLC's ("Defendant" or "FCC") scheme to enrich itself at the expense of small businesses in connection with the federal government's Paycheck Protection Program ("PPP"), enacted to ameliorate the financial impact on small businesses from the coronavirus crisis.

2. As more fully alleged herein, although PPP funding was intended to be processed on a first come, first served basis, and Defendant represented that it would process and prioritize loans as received in a "queue." However, Defendant had a secret priority system, whereby it shuffled the queue, and prioritized for processing high value PPP loans, that earned Defendant larger fees.

3. As a result, Plaintiff and many other class members who did not meet Defendant's prioritization criteria, did not receive PPP funding through Defendant.

4. Plaintiff seeks among other things, compensatory damages, restitutionary disgorgement, punitive damages, and injunctive relief.

**PARTIES**

5. Plaintiff Elizabeth M. Byrnes, Inc. was, at all relevant times, a corporation and small business operating in Los Angeles, California.

6. Defendant Fountainhead Commercial Capital, LLC ("Defendant" or "FCC") is a non-bank lender, including for Small Business Administration ("SBA") loans, and is authorized to conduct and is actually conducting business in the State of California. Defendant FCC designates its main office in Florida.

7. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore sue

such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

8.  Plaintiff is informed and believes and thereon alleges that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-Defendant; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in part in the State of California. At least one Defendant is a citizen of a state outside of California, and federal diversity jurisdiction exists and/or jurisdiction under the Class Action Fairness Act ("CAFA"). The class amount at issue exceeds $5,000,000 and the jurisdictional minimum of this Court under CAFA. Venue is proper because this is a class action, the acts and/or omissions complained of took place, in whole or in part within the venue of this Court.

///

///

## FACTUAL ALLEGATIONS

10. In or about March 2020, the coronavirus outbreak emerged as a nationwide crisis in the United States. On March 19, 2020, the Governor of California issued a stay at home order for all Californians in order to slow the spread of the coronavirus. The impact on small business of the coronavirus outbreak, social distancing, and the stay at home order, was devastating.

11. On March 27, 2020, in response to the economic fallout of the coronavirus crisis, the Coronavirus Air, Relief, and Economic Security ("CARES") Act was signed into law.

12. As part of the CARES Act, the federal government created a $349 billion program, called the Paycheck Protection Program ("PPP"), for small businesses. The PPP program made these funds available for loans originated through June 30, 2020. The PPP loans are backed by the SBA, but administered by private lenders. The PPP loans provide for loan forgiveness if certain criteria are met, including not laying off employees during the crisis.

13. Defendant FCC advertises itself as the largest non-bank SBA lender in the United States. Once the CARES Act was passed, Defendant FCC advertised on its website and elsewhere that it was one of the few nonbank lenders licensed to make PPP loans, and that it would process PPP loan applications and make such loans for small businesses. Defendant FCC served as intermediary between small business and federal funds under the PPP program. Defendant FCC encouraged small businesses to apply with it for PPP loans, and to act fast.

14. In submitting PPP loan applications, time was of the essence. The SBA regulations for the PPP program required that funds be distributed under a first come, first serve basis. Specifically, SBA Interim Final Rule §2m, states that the answer to the question "Is the PPP 'first-come, first-served?'" is "Yes."

15. Plaintiff is informed and believes, and on that basis alleges, that there was, in essence, a line or queue to obtain PPP loans, and your position in the line

**CLASS ACTION COMPLAINT**

would be determined by when your PPP application was submitted to the SBA.

16. Plaintiff submitted a PPP loan application to Defendant FCC on March 28, 2020. Plaintiff's PPP application was for less than $25,000. That same day, March 28, 2020, Defendant FCC responded with an email stating, among other things, "We've received your loan app and you are in the queue!" and "Help is on the way Elizabeth!" On March 29, 2020, Defendant FCC sent Plaintiff an email thanking her for the "Paycheck Protection Loan Program submission with Fountainhead!", and stating that "we're committed to helping as many small to mid-size businesses as possible to recover from the effects the coronavirus has had on their operations and financial condition." Defendant FCC's March 29 email asked Plaintiff to gather certain documentation, and stated "You can expect an invitation to a secure portal for document upload within the next **48 business hours**." Defendant FCC failed to provide the portal link to upload documents within that 48-hour time-frame.

17. On April 9, 2020, Plaintiff wrote to Defendant FCC inquiring about the status of her application, specifically asking "will you please confirm my business is in the PPP loan queue." On April 9, 2020, Defendant FCC responded "Yes" and further stated "you will soon be receiving an email which provides a link to register for and access our borrower portal. Once you have registered, you will be given the opportunity to upload required documents. . . We will be distributing the portal registration emails over the next 24-48 hours."

18. On April 13, 2020, Defendant FCC sent an email to Plaintiff with the subject heading "PPP links being sent," and stating "We ask for your patience with us . . . as we process your requests as quickly and responsibly as we can. Should you feel the need to remove yourself from our loan queue and join another lender's list, kindly let us know . . . so we may continue to prioritize our list."

19. In reliance on Defendant FCC's representation it would process her loan and she was in the queue, Plaintiff gathered the requested documents, waited

for the link to upload them, made personnel and strategic business decisions, and took other steps to manage her business.

20. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC received thousands of PPP loan applications, and chose to prioritize higher loans that would yield higher fees for Defendant FCC. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC chose to prioritize applications with higher loan amounts because processing those applications first resulted in larger origination fees for Defendant FCC. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC prioritized loans that were in the range of $100,000 to $300,000. Defendant FCC did not disclose to the public that it was prioritizing loans not on a first come, first served basis, but on criteria relating to the value of the loan.

21. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC failed to disclose and knowingly concealed from the public its unlawful practice of prioritizing higher value loans in order to benefit itself. Plaintiff is informed and believes, and on that basis alleges, that because of Defendant's undisclosed criteria for processing higher value loans first, Plaintiff and Class members' loans were not processed by Defendant FCC.

22. Plaintiff is informed and believes, that Defendant FCC has now suspended its program processing applications for and making PPP loans.

23. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC knew it had received more PPP loans applications than it would be able to process, but concealed that from the public.

24. Plaintiff and the Class reasonably relied on Defendant FCC's representations, communications and advertising in making the choice to apply for their PPP loan through Defendant FCC, not knowing that, contrary to its representations, Defendant FCC would prioritize large borrowers, to the detriment of Plaintiff and other small business owners. As a result of their reliance on

Defendant FCC's representations and omissions, Plaintiff and the Class suffered economic harm. Had Plaintiff and class known Defendant FCC was prioritizing large loans, they could have applied for a loan with a different lender.

25. As a direct and proximate result of Defendant FCC's wrongful conduct, Plaintiff and the Class have suffered financial harm including, but not limited to, loss of the time value of PPP funds.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

26. Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All businesses in the State of California who applied for PPP funding through Defendant FCC, in an amount less than $100,000, who met the SBA's criteria for PPP loan eligibility, and whose applications were not processed and funded by Defendant.

27. Plaintiff reserves the right to amend or otherwise alter the sub-class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant or otherwise.

28. This action has been brought and may be properly maintained as a class action pursuant to California Code of Civil Procedure § 382 and other applicable law, as follows:

29. **Numerosity of the Class:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses are known to Plaintiff or will be known to Plaintiff through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

30. **Existence of Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class.

These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

    a. Whether Defendant failed to process loan applications on a first come, first serve basis;

    b. Whether Defendant prioritized higher value loans;

    c. Whether Defendant failed to disclose that it prioritized higher value loans;

    d. Whether Defendant complied with SBA regulations in processing applications for PPP loans;

    e. Whether Defendants engaged in an unfair business practice in violation of Business & Professions Code §17200, et seq.

    f. Whether Defendants engaged in false advertising in violation of Business & Professions Code §17500, et seq.

    g. Whether Defendants fraudulently concealed they were prioritizing higher value PPP loans;

    h. The nature and extent of class-wide injury and the measure of damages for the injury.

31.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the subclasses they represent because Plaintiff, as a mortgage consultant for Defendant, was exposed and subjected to the same unlawful business practices as other mortgage salespersons employed by Defendant during the liability period. Plaintiff and the members of the class she represents sustained the same types of damages and losses.

32.    **Adequacy:** Plaintiff is an adequate representatives of the Class they seeks to represent because their interests do not conflict with the interests of the members of the subclasses Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously.  The interests of members of each Class

will be fairly and adequately protected by Plaintiff and their counsel.

33. **Superiority and Substantial Benefit:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims. The violations of law were committed by Defendant in a uniform manner and class members were exposed to the same unlawful practices. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

34. The Class should also be certified because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and

injunctive relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### (Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17500 *et seq.*)

35. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

36. In March and April 2020, Defendant represented to the public through its website and advertisements that it would process PPP loan applications for small businesses. Defendant represented via email, when persons submitted an application that they were in the "queue" with respect to prioritizing PPP loan application processing. Defendant made these representations to Plaintiff via email March 28, 2020, April 9, 2020, and April 13, 2020. Each of these emails came from email address info@fountainheadcc.com. The March 28, 2020 and April 13, 2020, stated they were from Chris Hurn, who Plaintiff is informed and believes, and on that basis alleges, is Defendant FCC's founder and CEO. The April 9, 2020 email from defendant FCC did not identify an author.

37. Defendant had a duty to disclose material information related to the transaction, including its practice of prioritizing high value loans. Among other things, a duty to disclose existed because (a) Defendant has exclusive knowledge of material information relating to the PPP loan application, including that it was not prioritizing on a first come, first serve basis, and instead prioritizing high vale loans; (b) SBA regulations required PPP loans to be processed on a first-come first serve basis, and Defendant had a legal duty to disclose practices inconsistent with these regulations; and (c) Defendant's made representations regarding Plaintiff and Class members being in the queue and help being on the way which were, at best, misleading half-truths that required disclosure of Defendant actually prioritizing higher value loans.

38. Defendants omitted, failed to disclose, and fraudulently concealed

material information, specifically that Defendant was prioritizing large loans for PPP loan processing and submission to the SBA.

39. Plaintiff and the Class justifiably, reasonably, and actually relied on Defendants fraudulent concealment by submitting PPP loan applications through Defendant FCC, and other acts, as alleged herein.

40. As a result of Defendants' fraudulent concealment, Plaintiff and the Class have suffered economic harm, including but not limited to, loss of use of money.

41. On the basis of all of the facts alleged hereinabove, Defendants' conduct and actions were despicable, and were done maliciously, oppressively and/or fraudulently, with a willful and conscious disregard of Plaintiffs' rights, entitling plaintiff to punitive damages under *California Civil Code* Section 3294. As to all Defendants, the officers, directors and managing agents were personally involved in the decision-making process with respect to the misconduct alleged herein and to be proven at trial. As to the conduct engaged in by representatives of the Insurer Defendants, their officers, directors and managing agents authorized and ratified each and every act on which Plaintiffs' allegations of punitive damages herein are based.

## SECOND CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
### (Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

42. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

43. Section 17200 of the California Business and Professions Code (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

44. Through its actions alleged herein, Defendant has engaged in unfair competition within the meaning of the UCL. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the

UCL.

45. Defendant's unlawful conduct under the UCL includes, but is not limited to, violating: (a) 15 U.S.C. §52(a), with false advertisements, as alleged herein; and (b) SBA regulations governing PPP funds, specifically 13 CFR Part 120, Docket No. SBA-2020-0015, RIN 3245-AH34, Business Loan Program Temporary Changes; Paycheck Protection Program, §2m, requiring that PPP loans be processed and funded on first come, first served basis.

46. Defendant's fraudulent conduct includes, but is not limited to, representing that it would process PPP applications, that Plaintiff and class members were in the queue for priority, and that help was on the way, without disclosing that Defendants were prioritizing high value PPP loans.

47. Defendant's unfair conduct includes, but is not limited to, prioritizing larger loans to enrich itself with larger fees, at the expense of smaller businesses getting timely PPP loan funding.

48. Plaintiff has standing to assert this claim because it has suffered injury in fact and has lost money as a result of Defendant's conduct, including but not limited to, use of PPP funds.

49. Plaintiff and the Class seek restitutionary disgorgement from Defendant, and an injunction prohibiting them from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

### THIRD CAUSE OF ACTION
### FALSE ADVERTISING
**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17500 *et seq.*)**

50. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

51. This cause of action is brought by Plaintiff and the Class under California Business & Professions Code §17500. Pursuant to California Business & Professions Code §17500, *et seq.*, it is "unlawful for any person to make or

disseminate or cause to be made or disseminated before the public in this state,…in any advertising device...or in any other manner or means whatever,…any statement, concerning…personal property or services…which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

52.  As described herein, Defendants committed acts of false advertising, as defined by §17500 by making or disseminating, or causing to be made or disseminated, before the public in this State, untrue or misleading statements in connection with the sale of goods or services, that Defendants knew or should have known were untrue or misleading.

53.  Plaintiff was aware of and reasonably relied on Defendant's statements.

54.  Plaintiff and the Class have lost money or property as a result of Defendants; false advertising because they would have not have applied for PPP funding through Defendant had they known the true facts, and would have received PPP funding sooner.

55.  Pursuant to section 17535 of the California Civil Code, Plaintiff, on behalf of himself and the Class, seeks restitution, a Court order enjoining Defendants from such future conduct and any other such orders as may be necessary to rectify Defendants' false advertising, including requiring Defendants to cease using misleading statements and to fully disclose the terms of the agreement.

## **PRAYER**

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated and also on behalf of the general public, pray for judgment against Defendant as follows:

A. An order that this action may proceed and be maintained as a class action;

B. Awarding Plaintiff and Class members damages, including special and consequential damages;

C. Awarding Plaintiff and Class members compensatory damages in an amount according to proof at trial;

D. Public injunctive relief enjoining Defendants unfair business practices or false advertising;

E. Awarding restitution from Defendants to Plaintiff and the Class;

F. Punitive damages;

G. Attorney's fees and costs;

H. For such other relief the Court deems just and proper.

DATED:  May 6, 2020                    **HAFFNER LAW PC**

                               By:     /s/ Joshua H. Haffner
                                        Joshua H. Haffner
                                        Attorneys for Plaintiff and others
                                        Similarly situated

14
**CLASS ACTION COMPLAINT**

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for itself and the Class members on all claims so triable.

DATED: May 6, 2020                **HAFFNER LAW PC**

                               By:    /s/ Joshua H. Haffner
                                        Joshua H. Haffner
                                        Attorneys for Plaintiff and others
                                        Similarly situated