Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, Esq. SBN 303056
gl@haffnerlawyers.com
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Bart I. Ring, SBN: 126235
(bart@bartringlaw.com)
**THE RING LAW FIRM APLC**
5550 Topanga Canyon Blvd., Suite 200
Woodland Hills, California 91367
Telephone: (818) 587-9292

Attorneys for Plaintiff Elizabeth M. Byrnes, Inc., and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH M. BYRNES, INC., a corporation, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOUNTAINHEAD COMMERCIAL CAPITAL, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | **Case No.** 2:20-cv-04149-DDP (RAOx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1. FRAUDULENT CONCEALMENT;**<br><br>**2. UNFAIR BUSINESS PRACTICES;**<br><br>**3. FALSE ADVERTISING.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Elizabeth M. Byrnes, Inc. ("Plaintiff") is informed and believe, and on that basis allege, as follows:

## NATURE OF THE ACTION

1. This is a California state-wide class action for fraudulent concealment, unfair business practices, and false advertising arising out of Defendants Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC's scheme to enrich themselves at the expense of small businesses in connection with the federal government's Paycheck Protection Program ("PPP"), enacted to ameliorate the financial impact on small businesses from the coronavirus crisis.

2. As more fully alleged herein, Defendants solicited PPP loan applications despite knowing they were not licensed to make these loans in California, and did not have adequate funding in place to make the loans. Further, although PPP funding was intended to be processed on a first come, first served basis, and Defendant represented that it would process and prioritize loans as received in a "queue," Defendant had a secret priority system, whereby it shuffled the queue, and prioritized for processing high value PPP loans, or loans from favored customers, that earned Defendants larger fees.

3. As a result, Plaintiff and many other class members who did not meet Defendants' prioritization criteria, did not receive PPP funding through Defendant.

4. Plaintiff seeks among other things, compensatory damages, restitutionary disgorgement, punitive damages, and injunctive relief.

## PARTIES

5. Plaintiff Elizabeth M. Byrnes, Inc. was, at all relevant times, a corporation and small business operating in Los Angeles, California.

6. Defendant Fountainhead Commercial Capital, LLC is a non-bank lender, including for Small Business Administration ("SBA") loans, and is actually conducting business in the State of California. Defendant Commercial Capital, LLC designates its main office in Florida.

7. Defendant Fountainhead SBF LLC is a non-bank lender, including for SBA loans, and is actually conducting business in the State of California. Defendant Fountainhead SBF LLC designates its main office in Florida.

8. Defendant Fountainhead Commercial Capital, LLC and Defendant Fountainhead SBF LLC are related companies, with the same or similar ownership, and a unity of interest, such that they are alter egos, and it would work a fraud or injustice to not so recognize. Additionally and alternatively, Defendant Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC were joint venturers in connection with the PPP lending program alleged herein. Defendants Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC will be collectively referred to as "Defendant FCC."

9. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore sue such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

10. Plaintiff is informed and believes and thereon alleges that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-Defendant; however, each of these allegations are deemed "alternative" theories

whenever not doing so would result in a contradiction with other allegations.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in part in the State of California. At least one Defendant is a citizen of a state outside of California, and federal diversity jurisdiction exists and/or jurisdiction under the Class Action Fairness Act ("CAFA"). The class amount at issue exceeds $5,000,000 and the jurisdictional minimum of this Court under CAFA. Venue is proper because this is a class action, the acts and/or omissions complained of took place, in whole or in part within the venue of this Court.

## FACTUAL ALLEGATIONS

12. In or about March 2020, the coronavirus outbreak emerged as a nationwide crisis in the United States. On March 19, 2020, the Governor of California issued a stay at home order for all Californians in order to slow the spread of the coronavirus. The impact on small business of the coronavirus outbreak, social distancing, and the stay at home order, was devastating.

13. On March 27, 2020, in response to the economic fallout of the coronavirus crisis, the Coronavirus Air, Relief, and Economic Security ("CARES") Act was signed into law.

14. As part of the CARES Act, the federal government created an initial allocation of $349 billion program, called the Paycheck Protection Program ("PPP"), for small businesses. The PPP program initially made these funds available for loans originated through June 30, 2020. The PPP loans are backed by the SBA, but administered by private lenders. The PPP loans provide for loan forgiveness if certain criteria are met, including not laying off employees during the crisis.

15. Defendant FCC advertises itself as the largest non-bank SBA lender in the United States. Immediately upon the CARES Act became law, Defendant FCC began advertising on its website, social media and elsewhere that it was one of the few nonbank lenders licensed to make PPP loans, and that it would process PPP loan applications and make such loans for small businesses. Defendant FCC encouraged small businesses through advertisements to apply with it for PPP loans, and to act fast.

16. Defendant FCC failed to disclose, however, that at the time they were representing to the public they could accept and process PPP loans, they were in fact not licensed to do so in California.

    a. As to Defendant Fountainhead Commercial Capital, LLC, its license to conduct business as a finance lender in California was revoked by The California Department of Business Oversight, on April 3, 2019, for violations of Financial Code 22159. Defendant Fountainhead Commercial Capital, LLC's California license has not been reinstated.

    b. With respect to Fountainhead SBF LLC, it was first licensed by the State of California as a finance lender on April 21, 2020.

    c. Because neither Defendant Fountainhead Commercial Capital, LLC or Defendant Fountainhead SBF LLC were licensed to conduct lending activities in California, their advertising to Californians that they would accept applications, and process their loans was false and misleading. Defendants' conduct in acting as lenders in California without a license violated California Financial Code §22100(a).

17. On March 27, 2020, at approximately 1:56 p.m., Chris Hurn, Defendant FCC's founder and president tweeted, on the media platform Twitter, the following information:

"#CARESAct SIGNED INTO LAW.  We will soon be tackling the loan inquiries lined up in our queue, providing business owners with capital they need within days."

18. On March 31, 2020, at approximately 7:13 a.m., Mr. Hurn tweeted, on the media platform Twitter, the following information:

"The SBA simply won't be able to process the #PaymentProtectLoans as quickly as the private sector.  Our team at @Fountainhead504 is ready to help your #smallbusiness.  I dive more into the benefit of private lending here:  glob.com/2020/03/31/sma

19. In his tweet at 7:13 a.m. on March 31, 2020, Mr. Hurn also referred to, and included in his tweet, a link that leads the reader to an article on GlobeSt.net, entitled SBA Leans on Private Sector for Influx of Distressed Borrowers. The article quotes Chris Hurn, who is identified in the article as the CEO and founder of Fountainhead, and contains the following passages:

- Fountainhead is able to approve loans within a few hours,
- Banks, however, will not be able to process loans quickly,
- Which is why small business owners should explore the private sector, Hurn said.

20. On March 31, 2020, at approximately 1:29 p.m., Mr. Hurn tweeted the following information:

"Starting to receive regulations from the SBA regarding #PaycheckProtectionProgram… if you're not already in our queue, apply today, we hope to make these loans within days. .."

21. On April 1, 2020, at approximately 8:24 a.m., Mr. Hurn tweeted the following information:

"The best thing you can do for your business today is get your documents together and apply   to get in our queue.  I say this

6
**FIRST AMENDED CLASS ACTION COMPLAINT**

with urgency, as the longer you wait, the longer it will take to receive funds. . ."

22. The representation that Fountainhead is able to approve loans within a few hours, quickly, and is ready to help were false, fraudulent, and omitted material information. In fact, neither Defendant Fountainhead Commercial Capital, LLC, or Defendant Fountainhead SBF LLC were licensed by the State of California at the time. Moreover, at the time, Defendants had no access to any credit or funding facility to actually fund the loans they were soliciting.

23. In submitting PPP loan applications, time was of the essence. The SBA regulations for the PPP program required that funds be distributed under a first come, first serve basis. Specifically, SBA Interim Final Rule §2m, states that the answer to the question "Is the PPP 'first-come, first-served?'" is "Yes."

24. On April 3, 2020, at approximately 1:30 p.m., Defendants FCC's company Twitter account, tweeted out the following information:

"Apply with us. . . We require not prior relationship, no special (money-making) criteria, and are processing first come, first serve . . . no prioritization."

25. Plaintiff is informed and believes, and on that basis alleges, that there was, in essence, a line or queue to obtain PPP loans, and your position in the line would be determined by when your PPP application was submitted to the SBA.

26. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC, using the PPP loan applications it had obtained, finally obtained $25,000,000 in funding from a third-party financial institution for PPP loans for the first time on or about April 21, 2020. However, by that time Defendant had accepted PPP loan applications seeking funding far in excess of $25,000,000.

27. Because of their inadequate funding, Defendants FCC could not fulfill their promise to fund many of the loans they accepted, and had no way of honoring its promise to "approve loans within a few hours." Rather, Defendants FCC

prioritized which of its PPP applicants received loan funding, picking the higher value loans or businesses that Chris Hurn, or others with Defendant FCC favored, like prior borrowers with a pre-existing relationship with Chris Hurn and/or Defendant FCC.

28. Plaintiff submitted a PPP loan application to Defendant FCC on March 28, 2020.  Plaintiff's PPP application was for less than $25,000. That same day, March 28, 2020, Defendant FCC responded with an email stating, among other things, "We've received your loan app and you are in the queue!" and "Help is on the way Elizabeth!"  On March 29, 2020, Defendant FCC sent Plaintiff an email thanking her for the "Paycheck Protection Loan Program submission with Fountainhead!", and stating that "we're committed to helping as many small to mid-size businesses as possible to recover from the effects the coronavirus has had on their operations and financial condition."  Defendant FCC's March 29 email asked Plaintiff to gather certain documentation, and stated "You can expect an invitation to a secure portal for document upload within the next **48 business hours**." Defendant FCC failed to provide the portal link to upload documents within that 48-hour time-frame.

28. On April 9, 2020, Plaintiff wrote to Defendant FCC inquiring about the status of her application, specifically asking "will you please confirm my business is in the PPP loan queue."  On April 9, 2020, Defendant FCC responded "Yes" and further stated "you will soon be receiving an email which provides a link to register for and access our borrower portal.  Once you have registered,  you will be given the opportunity to upload required documents. . .  We will be distributing the portal registration emails over the next 24-48 hours."

29. On April 13, 2020, Defendant FCC sent an email to Plaintiff with the subject heading "PPP links being sent," and stating "We ask for your patience with us . . . as we process your requests as quickly and responsibly as we can. Should you feel the need to remove yourself from our loan queue and join another lender's

list, kindly let us know . . . so we may continue to prioritize our list."

30. In reliance on Defendant FCC's representation it would process her loan and she was in the queue, Plaintiff gathered the requested documents, waited for the link to upload them, made personnel and strategic business decisions, did not then seek funding through an alternative PPP lender, and took other steps to manage her business. Plaintiff incurred costs and lost money, including copying and printing costs, gathering and preparing the documents to submit for her PPP loan.

31. Defendant FCC later received additional funding from another third party financial institution, in or about the first week of May 2020, but it was still inadequate to fund all PPP loans that had applied for funding to date. Defendants FCC never returned to the earlier applicants such as Plaintiff who had not been funded to process their loans once the additional funding came in. Instead, Defendant FCC prioritized loans of high value or with a favorable connection.

32. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC received thousands of PPP loan applications. Plaintiff is further informed and believes, and on that basis alleges, that because Defendant did not have adequate funding for the PPP loan applications, it decided to prioritize which of the applicants would receive PPP funding. Defendants, therefore, chose to prioritize higher loans that would yield higher fees for Defendant FCC, and loans from favored customers. Defendant FCC did not disclose to the public that it was prioritizing loans not on a first come, first served basis, but on criteria relating to the value of the loan and whether the business had a favorable relationship with Defendants FCC.

33. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC failed to disclose and knowingly concealed from the public their unlawful practice of prioritizing higher value loans, or loans from favored customers, in order to benefit itself. Plaintiff is informed and believes, and on that

basis alleges, that because of Defendant's undisclosed criteria for prioritizing loans, Plaintiff and Class members' loans were not processed by Defendant FCC.

34. Plaintiff is informed and believes, that Defendant FCC has now suspended its program processing applications for and making PPP loans.

35. Plaintiff is informed and believes, and on that basis alleges, that Defendant FCC knew it had received more PPP loans applications than it would be able to process or fund, but concealed that from the public.

36. Plaintiff and the Class reasonably relied on Defendant FCC's representations, communications and advertising in making the choice to apply for their PPP loan through Defendant FCC, not knowing that, contrary to its representations, Defendant FCC was not licensed, did not have funding, would prioritize large or favored borrowers, all to the detriment of Plaintiff and other small business owners. As a result of their reliance on Defendant FCC's representations and omissions, Plaintiff and the Class suffered economic harm. Had Plaintiff and class known Defendant FCC's prioritization practice, they could have applied for a loan with a different lender.

37. As a direct and proximate result of Defendant FCC's wrongful conduct, Plaintiff and the Class have suffered financial harm including, but not limited to, loss of the time value of PPP funds.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

38. Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All businesses in the State of California who applied to Defendant FCC, either directly or through a broker, for PPP funding, who met the SBA's criteria for PPP loan eligibility, and whose applications were not processed and funded by Defendant FCC.

39. Plaintiff reserves the right to amend or otherwise alter the sub-class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant or otherwise.

40. This action has been brought and may be properly maintained as a class action pursuant to California Code of Civil Procedure § 382 and other applicable law, as follows:

41. **Numerosity of the Class:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses are known to Plaintiff or will be known to Plaintiff through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

42. **Existence of Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

    a. Whether Defendant failed to process loan applications on a first come, first serve basis;

    b. Whether Defendant prioritized higher value loans;

    c. Whether Defendant prioritized loans from favored customers;

    d. Whether Defendants were licensed to act as lenders in California during the appropriate time;

    e. Whether Defendant had sufficient funding available to process the loans they accepted;

    f. Whether Defendant failed to disclose that it prioritized higher value loans;

    g. Whether Defendant failed to disclose that it prioritized loans for favored customers;

    h. Whether Defendant complied with SBA regulations in processing applications for PPP loans;

    i. Whether Defendants engaged in an unfair business practice in violation of Business & Professions Code §17200, et seq.

    j. Whether Defendants engaged in false advertising in violation of Business & Professions Code §17500, et seq.

    k. Whether Defendants fraudulently concealed they were prioritizing higher value PPP loans;

    l. The nature and extent of class-wide injury and the measure of damages for the injury.

43. **Typicality**: Plaintiff's claims are typical of the claims of the members of the subclasses they represent because Plaintiff, as a mortgage consultant for Defendant, was exposed and subjected to the same unlawful business practices as other mortgage salespersons employed by Defendant during the liability period. Plaintiff and the members of the class she represents sustained the same types of damages and losses.

44. **Adequacy:** Plaintiff is an adequate representatives of the Class they seeks to represent because their interests do not conflict with the interests of the members of the subclasses Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously. The interests of members of each Class will be fairly and adequately protected by Plaintiff and their counsel.

45. **Superiority and Substantial Benefit:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims. The violations of law were committed by Defendant in a uniform manner and class members were exposed to the same unlawful practices. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

46. The Class should also be certified because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and injunctive relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17500 *et seq.*)**

47. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

48. In March and April 2020, Defendant represented to the public through

its website and advertisements that it would process PPP loan applications for small businesses. Defendant represented via email, when persons submitted an application that they were in the "queue" with respect to prioritizing PPP loan application processing. Defendant made these representations to Plaintiff via email March 28, 2020, April 9, 2020, and April 13, 2020. Each of these emails came from email address info@fountainheadcc.com. The March 28, 2020 and April 13, 2020, stated they were from Chris Hurn, who Plaintiff is informed and believes, and on that basis alleges, is Defendant FCC's founder and CEO. The April 9, 2020 email from defendant FCC did not identify an author.

49. Defendant had a duty to disclose material information related to the transaction, including its lack of licensing, funding, and practice of prioritizing high value or favored loans. Among other things, a duty to disclose existed because (a) Defendant has exclusive knowledge of material information relating to its licensure status, its available funding, and its PPP loan application process, including that it was not prioritizing on a first come, first serve basis, and instead prioritizing high value or favored customer loans; (b) The law required that Defendant FCC be licensed, adequately funded, and that loans be processed on a first-come first serve basis, and Defendant had a legal duty to disclose practices inconsistent with these regulations; and (c) Defendant's made representations regarding its ability to accept and process applications, Plaintiff and Class members need to act quickly to submit PPP applications, that there was a queue and that help was on the way which were, at best, misleading half-truths that required disclosure of Defendants FCC's licensure status, lack of adequate funding, and prioritizing practice.

50. Defendants omitted, failed to disclose, and fraudulently concealed material information, specifically that Defendant was not licensed, was not adequately funded, and was prioritizing large or favored loans for PPP loan processing and submission to the SBA.

14
**FIRST AMENDED CLASS ACTION COMPLAINT**

51. Plaintiff and the Class justifiably, reasonably, and actually relied on Defendants fraudulent concealment by submitting PPP loan applications through Defendant FCC, paying for copies of requested loan documents, waiting for a link to upload loan documents, not at that time submitting applications with another PPP lender, and other acts, as alleged herein.

52. As a result of Defendants' fraudulent concealment, Plaintiff and the Class have suffered economic harm, including but not limited to, loss of use of money.

53. On the basis of all of the facts alleged hereinabove, Defendants' conduct and actions were despicable, and were done maliciously, oppressively and/or fraudulently, with a willful and conscious disregard of Plaintiffs' rights, entitling plaintiff to punitive damages under *California Civil Code* Section 3294. As to all Defendants, the officers, directors and managing agents were personally involved in the decision-making process with respect to the misconduct alleged herein and to be proven at trial. As to the conduct engaged in by representatives of the Insurer Defendants, their officers, directors and managing agents authorized and ratified each and every act on which Plaintiffs' allegations of punitive damages herein are based.

## SECOND CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)**

54. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

55. Section 17200 of the California Business and Professions Code (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

56. Through its actions alleged herein, Defendant has engaged in unfair competition within the meaning of the UCL. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the

UCL.

57. Defendant's unlawful conduct under the UCL includes, but is not limited to, violating: (a) California Financial Code §22100(a), acting as lender without a license; (b) 15 U.S.C. §52(a), with false advertisements, as alleged herein; and (c) SBA regulations governing PPP funds, specifically 13 CFR Part 120, Docket No. SBA-2020-0015, RIN 3245-AH34, Business Loan Program Temporary Changes; Paycheck Protection Program, §2m, requiring that PPP loans be processed and funded on first come, first served basis.

58. Defendant's fraudulent conduct includes, but is not limited to, representing that it would process PPP applications, that Plaintiff and class members were in the queue for priority, and that help was on the way, without disclosing that Defendants were not licensed to do these loans, did not have adequate capitalization, and were prioritizing high value or favored PPP loans.

59. Defendant's unfair conduct includes, but is not limited to, failing to disclose there lack of a license or a funding facility, and that they were prioritizing large or favored loans, to enrich itself, at the expense of smaller businesses getting timely PPP loan funding.

60. Plaintiff has standing to assert this claim because it has suffered injury in fact and has lost money as a result of Defendant's conduct, including but not limited to, copying costs and use of PPP funds.

61. Plaintiff and the Class seek restitutionary disgorgement from Defendant, and an injunction prohibiting them from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

### THIRD CAUSE OF ACTION
### FALSE ADVERTISING
**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17500 *et seq.*)**

62. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

63. This cause of action is brought by Plaintiff and the Class under California Business & Professions Code §17500. Pursuant to California Business & Professions Code §17500, *et seq.*, it is "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device...or in any other manner or means whatever,…any statement, concerning…personal property or services…which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

64. As described herein, Defendants committed acts of false advertising, as defined by §17500 by making or disseminating, or causing to be made or disseminated, before the public in this State, untrue or misleading statements in connection with the sale of goods or services, that Defendants knew or should have known were untrue or misleading.

65. Plaintiff was aware of and reasonably relied on Defendant's statements.

66. Plaintiff and the Class have lost money or property as a result of Defendants' false advertising because they would not have incurred copying costs for loan documents required by Defendants, would not have applied for PPP funding through Defendant, and would have received PPP funding sooner.

67. Pursuant to section 17535 of the California Civil Code, Plaintiff, on behalf of itself and the Class, seeks restitution, a Court order enjoining Defendants from such future conduct and any other such orders as may be necessary to rectify Defendants' false advertising, including requiring Defendants to cease using misleading statements and to fully disclose the terms of the agreement.

## PRAYER

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated and also on behalf of the general public, pray for judgment against Defendant as follows:

A. An order that this action may proceed and be maintained as a class action;

B. Awarding Plaintiff and Class members damages, including special and consequential damages;

C. Awarding Plaintiff and Class members compensatory damages in an amount according to proof at trial;

D. Public injunctive relief enjoining Defendants unfair business practices or false advertising;

E. Awarding restitution from Defendants to Plaintiff and the Class;

F. Punitive damages;

G. Attorney's fees and costs;

H. For such other relief the Court deems just and proper.

DATED: July 17, 2020                    **HAFFNER LAW PC**

By:    /s/ Joshua H. Haffner
Joshua H. Haffner
Attorneys for Plaintiff and others
Similarly situated

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for itself and the Class members on all claims so triable.

DATED: July 17, 2020        **HAFFNER LAW PC**

By: <u>/s/ Joshua H. Haffner</u>
Joshua H. Haffner
Attorneys for Plaintiff and others
Similarly situated