ANTHONY J. OLIVA (BAR NO. 123971)
MICHAEL R. FARRELL (BAR NO. 173831)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  toliva@allenmatkins.com
         mfarrell@allenmatkins.com
         svillagomez@allenmatkins.com

DANIEL T. STABILE
SHUTTS & BOWEN LLP
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Phone:  (305) 415-9063
Fax:  (305) 347-7714
E-mail: DStabile@shutts.com
Appearing Pro Hac Vice

Attorneys for Defendants
FOUNTAINHEAD SBF LLC and
FOUNTAINHEAD COMMERCIAL
CAPITAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH M. BYRNES, INC., a corporation, on behalf of itself and all other similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>FOUNTAINHEAD COMMERCIAL CAPITAL, LLC; and DOES 1 through 10, inclusive,<br><br>        Defendant. | Case No. 2:20-cv-04149-DDP (RAOx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Notice of Motion and Motion; Declaration of Michael R. Farrell; and [Proposed] Order filed concurrently herewith]<br><br>Date:   September 14, 2020<br>Time:  10:00 a.m.<br>Judge Hon. Dean D. Pregerson<br>Ctrm: 9C |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND BACKGROUND ........................................................1

   A.  The Paycheck Protection Program .................................................1

   B.  Factual Background ........................................................................3

   C.  The Plaintiff's Theory of the Case .................................................5

II.  LEGAL ARGUMENT .................................................................................8

   A.  The Legal Standard .........................................................................8

      i.  The Rule 12(b)(6) Standard ..................................................8

      ii.  All of the Causes of Action Are Required to Be Pleaded with Particularity Under Rule 9(b) ...........................9

   B.  Each of the Counts Should Be Dismissed Under Rule 12(b)(6) ........................................................................................10

      i.  The CARES Act Does Not Require Lenders to Process Applications on a "First Come, First Served" Basis ...............................................................................10

      ii.  The Licensing Requirement of the California Financing Law Does Not Apply to Fountainhead's Alleged "Solicitation" or "Advertising" .................................12

      iii.  Count I (Fraudulent Concealment) Fails Because Lenders Do Not Have a Duty to Disclose Their Internal Lending Methodology and Because There Was No Justified Reliance by the Plaintiff.............................14

      iv.  Count II (Unfair Business Practices Under the UCL) Fails for Various Reasons ......................................19

         a.  As the Plaintiff Has Not Pleaded the Lack of an Adequate Remedy at Law, Counts II and III Should Be Dismissed .................................19

         b.  The Plaintiff's Claim Under the "Unlawful" Prong Fails as a Matter of Law Because the Alleged Predicate Violations Are Legally Defective.............................................................21

         c.  The Plaintiff's Claim Under the "Fraudulent" Prong Fails as a Matter of Law Because, Among Other Reasons, Fountainhead Did Not Owe a Duty to Disclose............................25

         d.  The Plaintiff Fails to Sufficiently Allege Why Fountainhead's Practices Were "Unfair" ......................27

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-2-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**Page**

v.    Count III Fails to State a Claim for Violation of the FAL Because of Several Pleading and Substantive Deficiencies .................................................................29

III.    CONCLUSION ............................................................31

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004)..................................................................9

*Am. Bankers Mgmt. Co., Inc. v. Heryford,*
    885 F.3d 629 (9th Cir. 2018)...............................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................8

*Balzer v. Wal-Mart Stores, Inc.,*
    2015 WL 13828418 (C.D. Cal. Feb. 25, 2015)...............................22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................8

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (Cal. Ct. App. 4th Dist. 2007) ................27

*Brockington v. J.P. Morgan Chase Bank, N.A.,*
    2009 WL 1916690, (N.D. Cal. July 1, 2009)..................................17

*Bruton v. Gerber Prod. Co.,*
    703 F. App'x 468 (9th Cir. 2017)......................................................21

*Buller v. Sutter Health,*
    160 Cal. App. 4th 981 (Cal. Ct. App. 1st Dist. 2008) ..................27

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ..........................................................10

*California Serv. Station etc. Assn. v. Union Oil Co.,*
    232 Cal. App. 3d 44 (Cal. Ct. App. 1st Dist. 2007) ....................21

*Camillo v. Washington Mut. Bank F.A.,*
    No. 1:09-CV-1548, 2009 WL 3614793 (E.D. Cal. Oct. 27, 2009).....6, 16, 17

*Cargill Inc. v. Progressive Dairy Sols., Inc.,*
    2008 WL 2235354 (E.D. Cal. May 29, 2008)...............................30

*Copart, Inc. v. Sparta Consulting, Inc.,*
    339 F. Supp. 3d 959 (E.D. Cal. 2018 ............................................25

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010).............................................................3

*De la Torre v. CashCall, Inc.,*
    854 F.3d 1082, 1085 (9th Cir. 2017), *certified question*
    *answered,* 5 Cal. 5th 966 (2018) ....................................................12

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-4-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**Page(s)**

*Doe v. Epic Games, Inc.*,
  2020 WL 376573 (N.D. Cal. Jan. 23, 2020) .......................................... 28

*Duttweiler v. Triumph Motorcycles (America) Ltd.*,
  No. 14-cv-04809, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ............... 20

*Ellis v. Bank of Am., N.A.*,
  2013 WL 5935412 (C.D. Cal. Oct. 28, 2013) .................................... 23, 30

*F.T.C. v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) .......................................................... 22

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011 ............................................................. 9

*Heimrich v. Dep't of the Army*,
  947 F.3d 574, 577 (9th Cir. 2020) ...................................................... 9

*Hodsdon v. Mars, Inc.*,
  891 F.3d 867 (9th Cir. 2018) ........................................................... 30

*Hunt v. Wells Fargo NA*,
  576 F. App'x 693 (9th Cir. 2014) ...................................................... 17

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  600 F.3d 1092 (9th Cir. 2010) ......................................................... 23

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  2020 WL 2214152 (S.D. Cal. May 7, 2020) .......................................... 27

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................ 9, 29

*In re Trader Joe's Tuna Litig.*,
  289 F. Supp. 3d 1074 (C.D. Cal. 2017) ............................................... 21

*Johnson v. Winco Foods, LLC*,
  2018 WL 6017012 (C.D. Cal. Apr. 2, 2018) ......................................... 28

*Kasky v. Nike, Inc.*,
  45 P.3d 243 (Cal. 2002) ................................................................. 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................. 20, 21

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .................................................................. 21

*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014) ............................................................. 8

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................... 29

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-5-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**Page(s)**

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ............................................................................. 3

*Miller v. Ghirardelli Chocolate Co.,*
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................................................. 29

*Munning v. Gap, Inc.,*
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ........................................................... 20

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993) ............................................................................... 10

*O'Neil v. Kroger Co.,*
   2019 WL 4168727 (C.D. Cal. Aug. 30, 2019) ............................................... 15

*Palmer v. Apple Inc.,*
   No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr.
   15, 2016) .......................................................................................................... 28

*Philips v. Ford Motor Co.,*
   No. 14-CV-02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ............ 19, 20

*Profiles, Inc. v. Bank of America Corp.,*
   No. 1:20-cv-00894-SAG, D.E. 17 (D. Md. Apr. 13, 2020) .................. passim

*Reddy v. Gilbert Med. Transcription Serv., Inc.,*
   2010 WL 11515190 (C.D. Cal. July 28, 2010) ............................................. 17

*Rubio v. Capital One Bank,*
   613 F.3d 1195 (9th Cir. 2010) ......................................................................... 19

*Sonner v. Premier Nutrition Corp.,*
   No. 18-15890 (9th Cir. June 17, 2020) ........................................................... 19

*Tomek v. Apple Inc.,*
   636 F. App'x 712 (9th Cir. 2016) ...................................................................... 9

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ........................................................................... 9

*W. Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981) ............................................................................. 9

*Warner v. Tinder Inc.,*
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) .................................................... 23, 26

*Warzon v. Drew,*
   60 F.3d 1234 (7th Cir. 1995) ............................................................................. 9

*Weisbuch v. Cnty. of L.A.,*
   119 F.3d 778 (9th Cir. 1997) ............................................................................. 9

*whiteCryption Corp. v. Arxan Techs., Inc.,*
   2016 WL 3275944 (N.D. Cal. June 15, 2016) ............................................... 27

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-6-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

|  | **Page(s)** |
|---|---|

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008)................................................................29

*Williamson v. Reinalt-Thomas Corp.,*
    2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ...............................26

**Statutes**

15 U.S.C. § 52(a) ...............................................................................22, 23

15 U.S.C. § 636.........................................................................................1

California Business and Professions Code § 17200 .................................19

California Business and Professions Code § 17500..............14, 15, 29, 30

California Finance Code § 22100(a) .....................................................7, 22

California Finance Code § 22713 ..............................................................12

**Other Authorities**

*Business Loan Program Temporary Changes; Paycheck Protection
    Program—Additional Eligibility Criteria and Requirements for
    Certain Pledges of Loans, 85 Fed. Reg. 21,747 (Apr. 20, 2020)*...................2

*Policy Guidance – PPP Interim Final Rule*, SBA ....................................2

*SBA Loan Program Glitches Reveal Challenge in Rolling Out Billions
    in Coronavirus Aid*, CNN, Apr. 3, 2020 .........................................2

*Small-Business Loan Program, Chaotic From Start, Gets 2nd Round*,
    N.Y. TIMES, Apr. 26, 2020 ...........................................................1

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ....................................................8

Federal Rule of Civil Procedure 9(b) .....................................8, 9, 10, 29

Federal Rule of Civil Procedure 12(b)(6)..............................................1, 8

**Regulations**

Federal Regulation 20,811.........................................................................1

13 Code of Federal Regulations part 120 ..................................................1

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-7-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

The Defendants, Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC[1] (collectively, "**Fountainhead**"), through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully move to dismiss, with prejudice, the First Amended Class Action Complaint (the "Complaint") filed by Elizabeth M. Byrnes, Inc. (the "**Plaintiff**").

## I.   <u>INTRODUCTION AND BACKGROUND</u>

### A.   <u>The Paycheck Protection Program</u>

In response to the COVID-19 pandemic and resulting economic hardship, Congress passed, and the President signed into law, the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**" or the "**Act**"), Pub. L. No. 116-136, "to provide emergency assistance . . . for individuals, families, and businesses affected by the coronavirus pandemic." 85 Fed. Reg. 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120) (the "**Interim Final Rule**"). Of relevance to this action, Section 1102 of the CARES Act amended the Small Business Act, 15 U.S.C. § 636, to establish the temporary "**Paycheck Protection Program**" (the "**PPP**"). *See* CARES Act, § 1102. Under the PPP, Congress modified the Small Business Administration's (the "**SBA**") existing "7(a)" Loan Program and appropriated $349 billion: (i) to guarantee 100 percent of the loan amount for loans made by approved private lenders to qualifying small businesses and non-profits and (ii) to allow for loan forgiveness of up to the full amount of qualifying loans. Interim Final Rule, 85 Fed. Reg. at 20,811.

As has been well-documented, the legislative and regulatory roll out of the PPP has been chaotic and controversial.[2] The SBA's E-Tran Portal, through which

---

[1]   The Complaint erroneously lists Fountainhead Commercial Capital, LLC as a defendant, even though the lender to which the plaintiff applied for a loan (and the lender that is otherwise germane to this lawsuit) is Fountainhead SBF LLC.

[2]   *See* Stacy Cowley, Alan Rappeport, & Emily Flitter, *Small-Business Loan Program, Chaotic From Start, Gets 2nd Round*, N.Y. TIMES, Apr. 26, 2020,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

authorized private lenders submit, for ultimate SBA approval, loan applications and supporting materials for qualified borrowers, opened on April 3, 2020.[3] It was not until the eve of that opening – April 2 – that the Final PPP Application and the Interim Final Rule implementing the CARES Act were issued.[4] Subsequently, more than twenty different Program Rules documents have been posted in the Federal Register to date. *See* U.S. Dep't of Treasury, *Assistance for Small Businesses: Small Business Paycheck Protection Program: Tools*, Treasury.gov, https://home.treasury.gov/policy-issues/cares/assistance-for-small-businesses.

On April 16, thirteen days after the E-Tran Portal opened for PPP applications, the appropriated funds were exhausted, and the SBA sent out a notice that it was "unable to accept new applications . . . based on available appropriations funding."[5] The SBA indicated that it approved 1.6 million loans before the program was frozen, which equates to "14 years' worth of loans in less than 14 days . . . ."[6]

---

https://www.nytimes.com/2020/04/26/business/ppp-small-business-loans.html.

[3]   *See* Lauren Fox & Jeremy Herb, *SBA Loan Program Glitches Reveal Challenge in Rolling Out Billions in Coronavirus Aid*, CNN, Apr. 3, 2020, https://www.cnn.com/2020/04/03/politics/small-business-loan-problems/index.html.

[4]   *See* U.S. Small Bus. Admin., Policy Guidance – PPP Interim Final Rule, SBA.gov, https://www.sba.gov/document/policy-guidance--ppp-interim-final-rule; *see also* Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21,747 (Apr. 20, 2020) (to be codified at 13 C.F.R. pt. 120).

[5]   Jordain Carney & Sylvan Lane, *Small Business Loan Program Out of Money Amid Impasse Over New Funds*, THE HILL, Apr. 16, 2020, https://thehill.com/policy/finance/492919-small-business-loan-program-runs-out-of-funds-amid-debate-over-new-bill.

[6]   U.S. Small Bus. Admin., Statement from Secretary Steven T. Mnuchin and Administrator Jovita Carranza on the Success of the Paycheck Protection Program, SBA.gov, Apr. 17, 2020, https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/statement-secretary-steven-t-mnuchin-and-administrator-jovita-carranza-success-paycheck-protection.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-2-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  On April 24, 2020, the President signed the Paycheck Protection Program and

2  Health Care Enhancement Act, which modified the program and appropriated

3  another $310 billion to the PPP. *See* Paycheck Protection Program & Health Care

4  Enhancement Act, Pub. L. No. 116-139 (2020). On July 4, 2020, the Present signed

5  a bill extending the deadline for applicants to obtain a PPP loan E-Tran number to

6  August 8, 2020.[7]

7  **B.    Factual Background**

8  On March 28, 2020, before the opening of the E-Tran Portal, the Plaintiff

9  submitted an application (essentially, an expression of interest) to Fountainhead for

10  a PPP loan, "for less than $25,000." Cmpl. at ¶ 28. Fountainhead responded to the

11  Plaintiff's submission with a confirmation email, stating: "Help is on the way

12  Elizabeth! We've received your loan request and you are in the queue. You'll receive

13  another email shortly with next steps." *Id.*; Declaration of Michael R. Farrell

14  ("**Farrell Decl**.") filed concurrently herewith, Ex. 1.[8] The next day – March 29 –

15  Fountainhead sent the Plaintiff an email thanking the Plaintiff for its submission,

16  and providing a "shortlist of the items we believe we'll need to process the SBA 7(a)

17  relief loan," including a "completed application," payroll expense verification

18  documents, profit and loss statements, and by-laws and articles of incorporation of

19  the borrowing entity. Cmpl. at ¶ 28; Farrell Decl., Ex. 2. The email also noted (in

20  bold and italicized font): "due to the expected demand, we would like to ask for

21  your patience in advance, as we process as many of these loans as fast as we

22  possibly can." Farrell Decl., Ex. 2.

23

24  [7]  Matthew S. Schwartz, *Trump Signs Small Business Loan Program Extension*,
25  NPR, July 4, 2020, https://www.npr.org/2020/07/04/887322386/trump-signs-small-business-loan-program-extension.
26  [8]  This Court may properly consider the entirety of the communications that are
27  excerpted by the Plaintiff and submitted herewith. *See, e.g.*, *Marder v. Lopez*,
450 F.3d 445, 448 (9th Cir. 2006); *Coto Settlement v. Eisenberg*, 593 F.3d 1031,
28  1038 (9th Cir. 2010).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
1216971.01/LA
-3-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    The Plaintiff alleges that, on April 9, it wrote to Fountainhead to inquire about

2  the status of its submission, to which Fountainhead responded: "you will soon be

3  receiving an email which provides a link to register for and access our borrower

4  portal. Once you have registered, you will be given the opportunity to upload

5  required documents. . . . We will be distributing the portal registration emails over

6  the next 24-48 hours." Cmpl. at ¶ 28. On April 13, Fountainhead wrote again to the

7  Plaintiff, stating:

8          Since SBA's PPP loans were launched just six business
           days ago, the lending community has received a demand
9          surge that is unlike anything we have ever seen. Like
           many, we have been somewhat overwhelmed, yet honored
10         by your requests. . . .

11         We ask for your patience with us . . . as we process your
           requests as quickly and responsibly as we can. Should you
12         feel the need to remove yourself from our loan queue and
           join another lender's list, kindly let us know by emailing us
13         . . . , so we may continue to prioritize our list. Although
           we certainly don't want to do this in such a time of need,
14         we may eventually be forced to pause our acceptance of
           new submissions. Stay tuned for that determination and
15         other developments in the days ahead.

16  *Id.* at ¶ 29; Farrell Decl., Ex. 3.

17    As is evident from the Complaint, the Plaintiff never submitted the

18  documentation and information necessary for Fountainhead to process its

19  application. Although the Plaintiff correctly alleges that it "did not receive PPP

20  funding **through [Fountainhead]**" (Cmpl. at ¶ 3 (emphasis added)), it never alleges

21  that it failed to receive a PPP loan from a different lender. Based on information

22  available on the SBA's E-Tran Portal, the Plaintiff was, in fact, issued a PPP E-Tran

23  Loan Number through the submission of a different lender.

24    **C.**    <u>**The Plaintiff's Theory of the Case**</u>

25    On May 6, 2020, the Plaintiff filed its original Complaint (D.E. 1), which was

26  predicated solely on the theory that Fountainhead had a duty to disclose, and failed

27  to disclose, that it was "prioritizing" certain PPP loan applications for processing,

28  instead of processing the applications on a "first come, first served" basis. *See, e.g.*,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-4-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

D.E. 1 at ¶¶ 2, 20. On June 29, 2020, Fountainhead moved to dismiss the original Complaint with prejudice. *See* D.E. 17-1. Fountainhead explained that the Plaintiff's theory of recovery was fundamentally defective because, among other reasons, the PPP does not require lenders to process applications in a literal "queue" and because, in any event, lenders do not owe borrowers a duty to disclose their internal lending methodologies. *See, e.g.*, *id.* at pp. 9–15.

Rather than responding to Fountainhead's Motion to Dismiss, on July 17, 2020, the Plaintiff filed its amended Complaint. Again improperly relying on an Interim Final Rule statement that the PPP is "first-come, first-served," this version of the Complaint retains the Plaintiff's defective theory that lenders are required to process loan applications in the order in which they are received by the lender. *See, e.g.*, Cmpl. at ¶¶ 2, 23, 32. The Complaint, however, now asserts two subsidiary theories, which are also pleaded solely on "information and belief": that Fountainhead lacked "adequate funding" for the loan program and that, while Fountainhead was engaging in marketing, it did not have a finance lender's license. *See, e.g.*, *id.* at ¶¶ 16, 32. (The Plaintiff acknowledges, though, that Fountainhead SBF LLC – the only entity involved in PPP lending activities – obtained a license on April 21, 2020 and that it never actually lent money to the Plaintiff. *Id.*)

These theories are deeply flawed. Although the SBA processes and, if appropriate, approves PPP applications in order of submission by lenders, apart from setting forth certain baseline eligibility requirements, the CARES Act does not require lenders to submit any applications for ultimate SBA approval and does not constrain lenders from prioritizing applications in whatever manner they deem appropriate. Indeed, some lenders have expressly chosen to prioritize existing customers, companies with a particularly small number of employees, or veteran-owned businesses. *Profiles, Inc. v. Bank of Am. Corp.*, No. 1:20-cv-00894-SAG, Memorandum Opinion, D.E. 17 (D. Md. Apr. 13, 2020), at pp. 15–16. The only court to have considered this issue determined that the Act "does not constrain banks

1  such that they are prohibited from considering other information when deciding

2  from whom to accept applications, or in what order to process applications it

3  accepts." *Id.* at p. 14.

4      Moreover, although the inaccurate throughline of the Complaint is that the

5  CARES Act requires lenders to process applications chronologically, the Act does

6  not confer a private right of action. Accordingly, the Complaint seeks to plead

7  around this obstacle, resulting in causes of action for "concealment" and

8  "omissions" that awkwardly attempt to square with the facts. Formally, the

9  Complaint asserts three independent causes of action: (i) common law fraudulent

10 concealment (Count I), (ii) violation of California's Unfair Competition Law (the

11 "**UCL**") (Count II), and (iii) violation of California's False Advertising Law (the

12 "**FAL**") (Count III). Each of these counts is misguided.

13     As to Count I, in order to assert a plausible cause of action for fraudulent

14 concealment, there must be a "duty to disclose" the material fact allegedly concealed

15 by the defendant. Here, the Plaintiff asserts that Fountainhead was obligated to

16 disclose its allegedly insufficient funding and its alleged "practice of prioritizing

17 high value or favored loans." Cmpl. at ¶ 49. This claim fails, however, because

18 lenders are not obligated to disclose to borrowers their (often fluid) underwriting

19 methodology. Indeed, it is well-recognized that "a financial institution owes no duty

20 . . . to a borrower when the institution's involvement in the loan transaction does not

21 exceed the scope of its role as a mere money lender." *Camillo v. Washington Mut.*

22 *Bank F.A.*, No. 1:09-CV-1548, 2009 WL 3614793, at *7 (E.D. Cal. Oct. 27, 2009).

23 Fountainhead also did not have a duty to disclose its lack of a license before April

24 21, 2020 because the licensing requirement does not apply to the activities alleged in

25 the Complaint. As discussed below, the licensing requirement in Cal. Fin. Code

26 § 22100(a) applies only to loan-making activities in California, and not to mere

27 "solicitations" or "advertisements" that happen to reach Californians, which is the

28 only type of conduct alleged in the Complaint. *See* Cmpl. at ¶¶ 2, 16. Because the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-6-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  very foundation of the Complaint is that Fountainhead failed to actually make PPP

2  loans to the Plaintiff and to a class of Californians, the licensing requirement simply

3  does not apply in this matter.

4      In addition, the plaintiff must plausibly allege justifiable reliance. Here, the

5  Plaintiff alleges that it relied on Fountainhead's statements "by submitting PPP loan

6  applications" (*id.* at ¶ 51), but all of the communications alleged in Count I occurred

7  after the submission of the Plaintiff's application. It is logically impossible, then, for

8  the Plaintiff to have "relied" on the referenced statements in connection with its

9  submission to Fountainhead. And, with respect to the Plaintiff's allegation that it

10 deferred submitting an application to another lender because it believed that it would

11 obtain a PPP loan through Fountainhead (*see id.*), there are no well-pleaded

12 allegations to support this notion. In particular, as is evident from the Complaint, the

13 Plaintiff never submitted the information required to complete the underwriting

14 process, and Fountainhead specifically invited the Plaintiff to "join another lender's

15 list." *Id.* at ¶ 29; Farrell Decl., Ex. 3.

16     The purported consumer protection claims in Counts II and III should be

17 dismissed for a number of reasons. As a threshold matter, the Ninth Circuit has

18 recently recognized that equitable claims must be dismissed when the plaintiff fails

19 to properly plead that it has no adequate remedy at law. The only remedies

20 theoretically available under the UCL (Count II) and FAL (Count III) are injunctive

21 relief and restitution. Injunctive relief is not appropriate here because the Plaintiff

22 alleges that Fountainhead has suspended its PPP loan program (Cmpl. at ¶ 34) and,

23 in any event, the PPP ended on August 8, 2020. Nor does the Plaintiff even attempt

24 to allege that the money damages it seeks in Count I would be inadequate, such that

25 "restitution" would be necessary.

26     Beyond this significant threshold impediment, Counts II and III are plagued

27 by a variety of pleading and substantive defects described below, including: (i) that

28 the predicate violations of Count II are legally defective, (ii) that Fountainhead

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

-7-

1216971.01/LA

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

cannot be liable under the UCL's "fraudulent" prong absent a duty to disclose, which does not exist here, (iii) that the Plaintiff does not sufficiently allege that Fountainhead's asserted practices were "unfair" within the meaning of the UCL, (iv) that although Count III is required to be pleaded with particularity under Rule 9(b), it simply recites the boilerplate statutory language from the FAL and fails to identify the relevant "advertisements," and (v) that the alleged communications are not, in any event, "advertisements" under the FAL.

Given the insurmountable legal defects in the Plaintiff's claims, the Court should dismiss the Complaint with prejudice.

## II.     LEGAL ARGUMENT

### A.     The Legal Standard

#### i.     The Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual content 'to state a claim to relief that is plausible on its face.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this framework, a claim is facially plausible when "'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In resolving this Motion to Dismiss, the Court should accept as true only the Plaintiff's "well pleaded" factual allegations and construe those allegations in the light most favorable to the Plaintiff. *See Heimrich v. Dep't of the Army*, 947 F.3d 574, 577 (9th Cir. 2020). This Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations,'" *Fayer*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-8-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  *v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*,

2  643 F.2d 618, 624 (9th Cir. 1981)), and mere "conclusory allegations of law and

3  unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v.*

4  *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "'a plaintiff may plead

5  [it]self out of court'" if it "plead[s] facts which establish that [it] cannot prevail on

6  [its] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)

7  (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

8           **ii.    All of the Causes of Action Are Required to Be Pleaded with**

9                   **Particularity Under Rule 9(b)**

10          The Plaintiff must also comply with the heightened pleading standards of

11  Rule 9(b), which requires a plaintiff to "state with particularity the circumstances

12  constituting fraud . . . ." "Regardless of the title given to a particular claim,

13  allegations **grounded in fraud** are subject to Rule 9(b)'s pleading requirements."

14  *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (emphasis added); *see*

15  *also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *In re Sony*

16  *Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758

17  F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (explaining that, when a plaintiff alleges

18  fraud as the basis of a violation of the FAL, Rule 9(b) applies to the fraud

19  allegations). Here, in each of its substantive claims, the Plaintiff alleges that

20  Fountainhead engaged in fraudulent or misleading conduct: most notably, failing to

21  disclose that it was "prioritizing" the processing of higher-value or "favored" loan

22  applications. *E.g.*, Cmpl. at ¶¶ 50, 58, 64.

23          "To satisfy Rule 9(b), a pleading must identify the who, what, when, where,

24  and how of the misconduct charged, as well as what is false or misleading about [the

25  purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen.*

26  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation

27  marks omitted) (alteration in original). In its Complaint, the Plaintiff makes several

28  allegations solely on "information and belief." *E.g.*, Cmpl. at ¶¶ 25, 32, 33, 34, 35.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-9-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

This includes the key allegation animating the Plaintiff's theories of fraudulent concealment: "Plaintiff is further informed and believes, and on that basis alleges, that because [Fountainhead] did not have adequate funding for the PPP loan applications, it decided to prioritize which of the applicants would receive PPP funding." *Id.* at ¶ 32. Even if Fountainhead was prohibited from "prioritizing" certain loans under the PPP (it was not), the Plaintiff fails to plead any concrete factual allegations setting forth the factual basis for its belief. This defect, alone, allows the Court to dismiss the Complaint under Rule 9(b). *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief.").

**B.      Each of the Counts Should Be Dismissed Under Rule 12(b)(6)**

**i.      The CARES Act Does Not Require Lenders to Process Applications on a "First Come, First Served" Basis**

Although there is no private right of action under the CARES Act,[9] much of the Complaint is predicated on the notion that PPP lenders are obligated, under that legislation, to process applications and submit them to the SBA in the order in which they are received. For example, in Count I, the Plaintiff bases its fraudulent concealment cause of action on the assertion that "[t]he law required that . . . loans be processed on a first-come first serve basis, and [Fountainhead] had a legal duty to disclose practices inconsistent with these regulations[.]" Cmpl. at ¶ 49. Similarly, in Count II, the Plaintiff states that a predicate violation triggering the application of California's Unfair Competition Law is Fountainhead's violation of "SBA regulations governing PPP funds, . . . requiring that PPP loans be processed and

---

[9]   *Profiles, Inc. v. Bank of Am. Corp.*, No. 1:20-cv-00894-SAG, Memorandum Opinion, D.E. 17 (D. Md. Apr. 13, 2020), at pp. 7–13 ("The plain language of the statute does not suggest an intent to confer . . . a private remedy against participating SBA lenders. To the extent Congress intends to create such a private right of action, it will be able to make its intent clear, if it ultimately amends the CARES Act. . . . Creation of that remedy, however, is not within the purview of this Court.").

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1216971.01/LA

-10-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

funded on [a] first come, first served basis." *Id.* at ¶ 57. This notion is deeply flawed because, although the CARES Act sets forth baseline eligibility criteria, it does not restrict lenders from prioritizing which applications to process. Nor does it require lenders to process any applications at all.

The starting point of the analysis is the text of the legislation itself. Under the CARES Act, "a lender approved to make loans under this subsection," like Fountainhead, "shall be deemed to have been delegated authority by the Administrator to make and approve covered loans." CARES Act, § 1102(a)(2). Congress provided that lenders "shall consider": (i) "whether the borrower . . . was in operation on February 15, 2020" and (ii) "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors." *Id.* These are baseline eligibility requirements, and the CARES Act does not state or otherwise suggest that these are the only factors that a lender may consider.

The only court to have addressed the issue of whether lenders are constrained in their ability to process loan applications, beyond ensuring that the potential borrower satisfies the baseline requirements, determined that "[t]he statutory language does not constrain banks such that they are prohibited from considering other information when deciding from whom to accept applications, or in what order to process applications it accepts." *Profiles, Inc. v. Bank of Am. Corp.*, No. 1:20-cv-00894-SAG, Memorandum Opinion, D.E. 17 (D. Md. Apr. 13, 2020), at p. 14.

As the district court in *Profiles, Inc.* recognized, the legislative history of the CARES Act reinforces the plain meaning of the law. A previously-introduced version of the legislation, which was not passed by Congress, provided that "a lender shall **only** consider" certain enumerated factors. CARES Act, S. 3548, 116th Cong., § 1102(d)(2)(B) (Mar. 19, 2020) (emphasis added). "The fact that Congress considered the word 'only' in a previous version of the law that failed to win approval in a Senate committee, suggests, at the very least, that the Court should not

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-11-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   read that word back into the statute that both houses of Congress enacted." *Profiles,*
2   *Inc.*, at p. 14.

3        In view of the plain statutory language and the supporting legislative history,
4   although the CARES Act imposes certain baseline eligibility requirements, "the
5   Court is not at liberty to impose further limitations on lenders" (*id.* at p. 15), and
6   lenders may process applications in whatever order they wish, utilizing whatever
7   criteria they deem appropriate (or no criteria at all). Therefore, even accepting as
8   true the Plaintiff's allegations that Fountainhead "prioritized" certain loans because
9   of insufficient funding (which is incorrect), that practice is wholly permissible under
10  the CARES Act and cannot serve as the foundation for a civil action.

11          **ii.**    **The Licensing Requirement of the California Financing Law**
12                  **Does Not Apply to Fountainhead's Alleged "Solicitation" or**
13                  **"Advertising"**

14       The Plaintiff's subsidiary theory of liability – that Fountainhead committed
15  and concealed violations of the California Financing Law (the "**CFL**") – is similarly
16  misguided.[10] Notably, the Plaintiff does not allege that Fountainhead violated the
17  CFL's licensing requirement by extending a formal loan offer, or by actually lending
18  money, to the Plaintiff or to any other Californian. The Plaintiff asserts, instead, that
19  Fountainhead violated the CFL simply by communicating about its PPP lending
20  initiative – *i.e.*, by publicly "soliciting" PPP loan applications, by "representing" to
21  the public that it could accept applications, and by "advertising" that it could process
22  PPP loans – some of which communications happened to reach Californians. Cmpl.
23  at ¶¶ 2, 16. The text and structure of the CFL demonstrate that the statute does not
24  require a license for this type of conduct. Indeed, the Plaintiff's reading would
25  impose liability on every out-of-state lender that posts a single Tweet about a loan

26

---

27  [10] Like the CARES Act, the CFL does not confer a private right of action. *E.g.*, *De*
28  *la Torre v. CashCall, Inc.*, 854 F.3d 1082, 1085 (9th Cir. 2017), *certified question answered*, 5 Cal. 5th 966 (2018) (citing Cal. Fin. Code § 22713).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-12-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  product, not directed at any particular audience or group of consumers, if that Tweet

2  just so happens to be read by a Californian.

3      Section 22100(a) of the CFL provides that "[n]o person shall **engage in the**

4  **business** of a finance lender or broker without obtaining a license from the

5  commissioner" (emphasis added). Although the statute does not define the phrase

6  "engage in the business," the CFL, as a whole, shows that actual loan-making in

7  California – not "solicitations" or "advertisements" to an undefined group, as

8  occurred here – is the regulatory target of § 22100(a).

9      Section 22050.5(a), for example, provides that the CFL "does not apply to

10  any person who makes no more than one loan in a 12-month period if that loan is a

11  commercial loan . . . ." Similarly, § 22050(e) authorizes certain lenders to "make" up

12  to five California loans in a twelve-month period without obtaining a license. In

13  view of these exemptions, which allow lenders to actually transact with

14  Californians, it would be absurd if the licensing requirement were to apply to, and

15  extend liability for, a lender's mere Tweets and emails, which communications are

16  indisputably less invasive to Californians than actual loan-making. Cal. Fin. Code

17  § 22161(a)(1), which specifically prohibits false advertising by finance lenders,

18  further reinforces Fountainhead's reading of the licensing requirement. That

19  provision states that "[a] person subject to [the CFL] shall not . . . make a materially

20  false or misleading statement or representation to a borrower about the terms or

21  conditions of that borrower's loan, when making or brokering the loan" (emphasis

22  added). As with the previously mentioned exemptions, the "**making or brokering**"

23  language suggests that the purpose of the CFL's licensing requirement is to regulate

24  loan-making activities in California, and that such activities are a predicate for the

25  application of the statutory framework.

26      The Plaintiff's reading of the licensing requirement goes too far. Under the

27  Plaintiff's theory, every out-of-state lender (like Fountainhead) would need to

28  shoulder the burden and expense of obtaining a license simply to post a Tweet,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-13-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

available to anyone in the world with Internet access, even when that lender has no specific intention of making loans or transacting business in California. And the text and structure of the CFL support Fountainhead's common sense reading: that the licensing requirement applies only to lenders that actually make California loans to California borrowers. Because the Plaintiff has not alleged (and could not allege, because it did not occur) that Fountainhead actually made any loans to Californians without a license – which Fountainhead obtained on April 21, 2020, prior to issuing any PPP loans in California – Fountainhead did not violate the CFL. For that reason, and as discussed further below, the alleged CFL violation cannot serve as a basis of the Plaintiff's claims.

> ### iii.     Count I (Fraudulent Concealment) Fails Because Lenders Do Not Have a Duty to Disclose Their Internal Lending Methodology and Because There Was No Justified Reliance by the Plaintiff

Count I purports to assert a claim for "fraudulent concealment" under § 17500, which the Plaintiff describes as the "Unfair Competition Law." Cmpl. at ¶¶ 47–53. In view of contradictory statements in the Count, one is forced to speculate about whether the Plaintiff is seeking to plead a violation of the common law, the FAL, or the UCL. Although the cause of action expressly cites § 17500, that section refers to the FAL, not the UCL. In addition, the Plaintiff is expressly seeking punitive damages in Count I (*id.* at ¶ 53), but it is well-established that private plaintiffs cannot obtain money damages under the UCL or FAL and may only obtain restitution and injunctive relief. *E.g.*, *Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 632 (9th Cir. 2018) ("Although private parties may seek injunctive relief and restitution under the UCL, only a public prosecutor . . . may pursue civil penalties."); *O'Neil v. Kroger Co.*, 2019 WL 4168727, at *2 (C.D. Cal. Aug. 30, 2019) ("The California Supreme Court has also defined the remedies that private plaintiffs may recover for successful FAL claims to exclude monetary

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-14-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

damages." (citing *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)). Read most generously to the Plaintiff (*i.e.*, striking the parenthetical reference to "Violation of California's Unfair Competition Law" and "§§ 17500 *et seq.*"), Count I appears to be asserting a cause of action for fraudulent concealment under California common law, and – during a meet and confer correspondence – counsel for the Plaintiff confirmed that the parenthetical reference was a typographical error. Accordingly, for purposes of this Motion, Fountainhead assumes that the Plaintiff is seeking to assert a common law fraudulent concealment cause of action. This cause of action is fatally defective, and should be dismissed with prejudice for two primary reasons.

First, in common law fraud cases asserting concealment of a material fact, like this case, the plaintiff must plausibly allege that the defendant had a "**duty to disclose**" the fact allegedly concealed. The disclosure failures pleaded in Count I are that Fountainhead did not "disclose material information related to . . . its lack of licensing, funding, and practice of prioritizing high value or favored loans." Cmpl. at ¶ 49.

With respect to the Plaintiff's "licensing" theory, as detailed above, Fountainhead was not required to obtain a license under the CFL unless and until it actually made more than five loans in California. The three emails cited in support of Count I evidence, at most, preliminary communications between the Plaintiff and Fountainhead (*id.* at ¶ 48), which themselves contemplate further action before Fountainhead would even approve the Plaintiff's application (much less fund a PPP loan). *See, e.g.*, *id.* at ¶¶ 28–29; Farrell Decl., Exs. 1–3. Because these pre-approval, pre-loan communications do not implicate Fountainhead's licensing obligation under the CFL, Fountainhead's lack of a license at the time of the emails was not a "material" fact subject to disclosure. Indeed, the Plaintiff's "licensing" theory would essentially require the Court to impose a tort duty of disclosure, when Fountainhead did not violate the statutory obligation on which that duty is supposedly grounded.

The balance of Count I is similarly defective. The Plaintiff's "funding" and "prioritization" theories are intertwined; it alleges that Fountainhead improperly "prioritized" higher-value and "favored" applications, in violation of the PPP, precisely "because" Fountainhead did not obtain sufficient funding from its third-party partner. *See, e.g.*, Cmpl. at ¶¶ 22, 26, 27, 31, 32. But these theories also fail because California courts – like courts elsewhere – hold that, absent certain "special circumstances," which are not applicable here, lenders do not owe borrowers a duty to disclose their internal lending methodology. This principle comports with common sense: borrowers are not privy to the (often fluid) metrics and criteria utilized by lenders to determine to whom and on what terms the lenders intend to extend loan offers. An offer is presented by the lender to the borrower in an arms-length manner, and the borrower can accept or reject the offer.

This issue was addressed in *Camillo v. Washington Mut. Bank F.A.*, No. 1:09-CV-1548, 2009 WL 3614793 (E.D. Cal. Oct. 27, 2009), where the plaintiffs attempted to support their fraudulent concealment claim with the allegation that the defendants "did not inform them that Plaintiffs would not quality for a loan." *Id.* at *7. The defendants argued that "there is no such duty." *Id.* In granting the defendants' motion to dismiss, the Eastern District of California held that "Defendants' argument is well taken":

> To state a cause of action for fraudulent concealment, the defendant must have been under a duty to disclose some fact to the plaintiff. . . . Plaintiffs only allege a duty to disclose that they could not qualify for the loan. . . . **However, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its role as a mere money lender**. . . . Thus, Defendants had no duty to disclose to [Plaintiffs] that [they] did not have the ability to repay the loan.

//

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1216971.01/LA

-16-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   *Id.* (emphasis added) (internal quotation marks and citations omitted) (alterations in

2   original); *see also, e.g.*, *Hunt v. Wells Fargo NA*, 576 F. App'x 693, 694 (9th Cir.

3   2014) (affirming dismissal of a fraudulent concealment claim because the defendant

4   bank "did not owe [plaintiff] a duty of care" and collecting California cases);

5   *Brockington v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 1916690, at *6 (N.D. Cal.

6   July 1, 2009) ("Under [California state decisions], there is no fiduciary duty owed

7   between a lender and a borrower, and without a duty to disclose, defendant cannot

8   be liable for concealment. . . . Plaintiff cannot state a claim against defendant for

9   concealment where defendant had no duty to disclose. . . . Accordingly, the motion

10  to dismiss the Second Cause of Action for Concealment is granted."). So, even

11  assuming for purposes of this Motion that Fountainhead was prohibited from

12  "prioritizing" applications under the PPP (which it was not), Fountainhead was not

13  under any duty to disclose the nature of its lending practices, or the justification for

14  those practices. These obstacles are fatal to the Plaintiff's "funding" and

15  "prioritization" theories.

16      Second, in order to establish a claim for concealment under California law,

17  the plaintiff must properly allege – and ultimately prove – "justifiable reliance" on

18  the alleged statements that the defendant had a duty to disclose and failed to

19  disclose. *See, e.g.*, *Reddy v. Gilbert Med. Transcription Serv., Inc.*, 2010 WL

20  11515190, at *4 (C.D. Cal. July 28, 2010), *aff'd*, 467 F. App'x 622 (9th Cir. 2012)

21  ("[T]o be actionable, a . . . concealment must induce justifiable reliance and

22  resulting damage." (internal quotation marks omitted)).

23      In Count I, the Plaintiff asserts that: "Plaintiff and the Class justifiably,

24  reasonably, and actually relied on Defendants fraudulent concealment by

25  **submitting PPP loan applications** through Defendant [Fountainhead], paying for

26  copies of requested loan documents, waiting for a link to upload loan documents,

27  not at that time submitting applications with another PPP lender, and other acts, as

28  alleged herein." Cmpl. at ¶ 51 (emphasis added). As an initial matter, the Plaintiff

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-17-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  alleges that it submitted a PPP application to Fountainhead on March 28, 2020. *Id.*

2  at ¶ 28. But, the only communications alleged in support of Count I – three emails

3  from March 28, April 9, and April 13 – occurred after the Plaintiff submitted its

4  application. *Id.* at ¶ 48. Therefore, it is logically impossible that the Plaintiff "relied"

5  on such statements to "submit" its loan application.

6      Finally, with respect to the Plaintiff's assertions that Fountainhead's emails led

7  it to believe that it was going to obtain a loan, there are no well-pleaded allegations

8  to support this notion. Indeed, the Plaintiff specifically alleges that Fountainhead

9  wrote to it, stating: "[s]hould you **feel the need to remove yourself from our loan**

10 **queue and join another lender's list**, kindly let us know . . . so we may continue to

11 prioritize our list." *Id.* at ¶ 29 (emphasis added). In addition, the Plaintiff correctly

12 suggests that it never submitted the information required by Fountainhead to

13 underwrite and process a PPP loan. Under these circumstances, where the Plaintiff

14 did not even complete its application, where Fountainhead stated that it would

15 process only "as many of these loans" as possible (Farrell Decl., Ex. 2), where

16 Fountainhead expressed a "demand surge that is unlike anything we have ever seen"

17 (Cmpl. at ¶ 29; Farrell Decl., Ex. 3), indicated that it "may eventually be forced to

18 pause [its] acceptance of new submissions" (*id.*), and expressly invited the Plaintiff

19 to consider submitting an application with another lender (*id.*), it is implausible that

20 the Plaintiff justifiably relied on its alleged belief that the loan was certain to be

21 processed by Fountainhead.

22          **iv.    Count II (Unfair Business Practices Under the UCL) Fails**

23                  **for Various Reasons**

24      Count II asserts a claim for "unfair competition" in violation of the UCL, Cal.

25 Bus. & Prof. Code § 17200 *et seq.* Section 17200 provides, in relevant part: "As

26 used in this chapter, unfair competition shall mean and include any unlawful, unfair

27 or fraudulent business act or practice . . . ." "Each of these three adjectives captures

28 'a separate and distinct theory of liability.'" *Rubio v. Capital One Bank*, 613 F.3d

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

-18-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1216971.01/LA

1195, 1203 (9th Cir. 2010). The Plaintiff alleges that Fountainhead violated all three

prongs of the UCL (Cmpl. at ¶¶ 57–59), and each of these prongs will be addressed

in turn. But Fountainhead first addresses a threshold issue: in accordance with the

Ninth Circuit's recent decision in *Sonner*, Counts II and III are subject to dismissal

because they are equitable counts, and the Plaintiff has not even attempted to plead

the lack of an adequate remedy at law.

> **a.** **As the Plaintiff Has Not Pleaded the Lack of an
> Adequate Remedy at Law, Counts II and III Should Be
> Dismissed**

In *Sonner v. Premier Nutrition Corp.*, No. 18-15890 (9th Cir. June 17, 2020),

the Ninth Circuit determined that a federal court sitting in diversity jurisdiction, as is

the case here, should apply federal equitable principles to equitable claims under the

UCL. Therefore, in accordance with federal equitable principles, a claim under the

UCL should be dismissed where the plaintiff fails to properly plead that it has no

adequate remedy at law. *Id.* (affirming the district court's dismissal of the plaintiff's

claims under the UCL).

In the context of putative class action lawsuits, many federal courts in

California have dismissed UCL (and FAL) causes of action at the pleading stage for

failure to properly allege the lack of an adequate remedy at law. For example, in

*Philips v. Ford Motor Co.*, No. 14-CV-02989, 2015 WL 4111448, at *16 (N.D. Cal.

July 7, 2015), the Northern District of California dismissed the plaintiff's UCL claim

because "relief under the UCL is subject to fundamental equitable principles,

including inadequacy of the legal remedy." Given that the plaintiffs had "an

adequate remedy at law in the form of their claim for fraudulent concealment, the

Court dismiss[ed] California Plaintiffs' UCL claims." *Id.* Similarly, in *Duttweiler v.
Triumph Motorcycles (America) Ltd.*, No. 14-cv-04809, 2015 WL 4941780, at *9–

*10 (N.D. Cal. Aug. 19, 2015), the court dismissed the UCL and FAL counts

because the plaintiff failed to "allege facts suggesting that damages . . . would not

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-19-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

provide adequate relief." *See also Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203–04 (N.D. Cal. 2017) (dismissing UCL and FAL causes of action based on the "numerous legal authorities" providing that a plaintiff seeking equitable relief must establish the lack of a legal remedy, and reasoning that "it matters not that a plaintiff may have no remedy if her other claims fail").

As noted above, apart from civil penalties not at issue here, the UCL and FAL provide only the equitable remedies of restitution and injunctive relief (*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)), and those are the only remedies sought by the Plaintiff in Count II and Count III (Cmpl. at ¶¶ 61, 67). And, in the Complaint, the Plaintiff simultaneously seeks "compensatory damages," "consequential damages," and "punitive damages," apparently emanating from its common law cause of action for fraudulent concealment (Count I). Cmpl. at p. 18 (PRAYER, B, C, F).

The Plaintiff has not pleaded, even nominally, that these legal remedies are inadequate. And they are not. Moreover, injunctive relief is inappropriate here because, as alleged by the Plaintiff, Fountainhead "has now suspended its program processing applications for and making PPP loans." *Id.* at ¶ 34.[11] Indeed, Fountainhead has ceased its acceptance of applications from the public. In any event, the PPP ended on August 8, 2020, so there is nothing to enjoin. With respect to the issue of restitution, the only out-of-pocket losses alleged are copying and printing costs that the Plaintiff purportedly incurred in reliance on Fountainhead's communications. *Id.* at ¶¶ 30, 60, 66. But again, the Plaintiff fails to plead how the

---

[11] Injunctive relief is a court order to stop the conduct of which the plaintiff complains. Injunctive relief is "intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur" but it "will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur . . . ." *California Serv. Station etc. Assn. v. Union Oil Co.*, 232 Cal. App. 3d 44, 56–57 (Cal. Ct. App. 1st Dist. 2007).

1  monetary remedies that it seeks are inadequate, such that the equitable remedy of

2  restitution would be appropriate.[12]

3      Under these facts, and particularly in view of the recent Ninth Circuit

4  precedent, Counts II and III should be dismissed.

5          **b.**    **The Plaintiff's Claim Under the "Unlawful" Prong**

6              **Fails as a Matter of Law Because the Alleged Predicate**

7              **Violations Are Legally Defective**

8      To state a claim under the UCL's "unlawful" prong, a plaintiff must

9  sufficiently plead: (i) a predicate violation and (ii) an accompanying economic

10  injury caused by the violation. *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074,

11  1088 (C.D. Cal. 2017). Also, the "reasonable consumer" test is a requirement under

12  the "unlawful" prong "when [the test] is an element of the predicate violation."

13  *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 472 (9th Cir. 2017). Here, the

14  Plaintiff alleges that Fountainhead committed three predicate acts by violating: (i)

15  Rule 2m of the Interim Final Rule (the purported "first come, first served" policy),

16  (ii) Cal. Fin. Code § 22100(a) (the CFL's licensing requirement), and (iii) 15 U.S.C.

17  § 52(a) (the federal false advertising law). Cmpl. at ¶ 57.

18      With respect to the asserted violation of Rule 2m, as discussed fully in

19  Section II(B)(i), the alleged failure to process PPP loan applications on a "first

20  come, first served" basis is not a violation of the PPP as a matter of law. *See*

21  *Profiles, Inc.*, at 6–7 (explaining that "[n]either the CARES Act nor the Interim

22

---

23  [12] Restitution would be inappropriate here for the additional reason that the Plaintiff
24  did not provide any money or property to Fountainhead. The object of restitution
   is to restore the status quo by returning to the plaintiff funds in which it has an
   ownership interest. *Korea Supply Co.*, 29 Cal. 4th at 1149. Restitution
25  necessarily requires that "money or property have been lost by a plaintiff, on the
   one hand, and that it have been acquired by a defendant, on the other." *Kwikset*
26  *Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011). Notwithstanding the
   Plaintiff's purported copying and printing costs, the Plaintiff has not alleged (and
27  cannot allege) that it provided money or property to Fountainhead in connection
   with its PPP application, by way of a loan application fee or any other direct
28  charge.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-21-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  Final Rule imposes prohibitions on what lenders may do in their processes for

2  accepting or processing applications"). As to the asserted violation of § 22100(a), as

3  discussed fully in Section II(B)(ii), the licensing requirement applies only to loan-

4  making activities in California, and thus Fountainhead did not violate the CFL

5  through its "solicitations" and "advertisements" by Twitter and email. *See* Cmpl. at

6  ¶¶ 2, 16. Because these alleged violations are not cognizable predicate acts, these

7  aspects of the Plaintiff's "unlawful" claim fail. *See, e.g.*, *Balzer v. Wal-Mart Stores,*

8  *Inc.*, 2015 WL 13828418, at *3 (C.D. Cal. Feb. 25, 2015) ("If there is no violation

9  of the predicate law serving as the basis for the 'unlawful' claim, there can be no

10  actionable UCL claim.").

11        The Plaintiff also fails to sufficiently allege an underlying violation of 15

12  U.S.C. § 52(a), the federal false advertising law, which generally prohibits persons

13  from disseminating "false advertisements" in interstate commerce. First, purely from

14  a pleading perspective, this claim is missing a key allegation. In the Ninth Circuit, in

15  order to establish that an "advertisement" is misleading under this statute, there must

16  be a showing that the material "is likely to mislead consumers acting reasonably

17  under the circumstances." *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir.

18  1994) (internal quotation marks omitted). Nowhere in the Complaint, however, does

19  the Plaintiff make the critical allegation that Fountainhead's communications – one

20  of which expressly advised the Plaintiff about the potential of "join[ing] another

21  lender's list" (Cmpl. at ¶ 29) – were "likely to mislead" reasonable consumers.

22  Because the "reasonable consumer" test is an element of a federal false advertising

23  claim, and because the Plaintiff has failed to make the required allegations regarding

24  probability of deception, the Plaintiff fails to state a claim under § 52(a) and, thus,

25  under the "unlawful" prong.

26        This false advertising theory is also substantively misguided. As an initial

27  matter, the allegations in paragraph 57 of the Complaint are hopelessly vague: the

28  Plaintiff asserts that Fountainhead violated § 52(a) "with false advertisements, as

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-22-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   alleged herein," but the Plaintiff completely neglects to identify the allegedly

2   offending statements. To the extent that the Plaintiff's false advertising claim is

3   based on Fountainhead's March 28, April 9, and April 13 emails (as in Count I), the

4   federal statute would not apply to these individualized communications. This is

5   because the reach of § 52(a) – which only covers "advertisements" – is limited to

6   "widespread promotional activities usually directed to the public at large[.]" *Ellis v.*

7   *Bank of Am., N.A.*, 2013 WL 5935412, at *3 (C.D. Cal. Oct. 28, 2013) (internal

8   quotation marks omitted)) (quoting *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*

9   *of Pittsburgh, Pa.*, 600 F.3d 1092, 1098 (9th Cir. 2010)). Because these emails are

10  communications to the Plaintiff or to a group of individuals who submitted an

11  indication of interest in applying for a PPP loan through Fountainhead (instead of

12  "widespread promotional activities" to the "public at large"), the emails are not

13  "advertisements" under § 52(a) and thus do not violate the statute. *See id.*

14  (dismissing the plaintiff's § 52(a) claim when the plaintiff alleged that "defendants

15  sent notices which were addressed directly to her," and failed to allege that "she

16  received materials from defendants that constituted 'widespread promotional

17  activities directed to the public at large'").

18      In any event, even if the Court were to consider these emails and the Tweets

19  described in the amended Complaint, it could dispense with the Plaintiff's false

20  advertising theory because of another fundamental defect: that the communications,

21  individually and collectively, are not misleading as a matter of law. *See, e.g.*,

22  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1092 (C.D. Cal. 2015) (explaining

23  that, although probability of deception is generally a question of fact, "where a court

24  can conclude as a matter of law that members of the public are not likely to be

25  deceived . . . , dismissal is appropriate" (internal quotation marks omitted)).

26      As to Fountainhead's emails to the Plaintiff, those communications are not

27  misleading for a host of reasons: because the emails explicitly contemplated further

28  action before Fountainhead could even approve the Plaintiff's loan application,

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-23-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   because Fountainhead warned the Plaintiff about the "demand surge" and the

2   growing backlog of PPP applications, and because, ultimately, Fountainhead

3   advised the Plaintiff about the prospect of joining another lender's list. *See* Cmpl. at

4   ¶¶ 28–29; Farrell Decl., Exs. 1–3. Far from "misleading" the Plaintiff about its

5   chances of obtaining a PPP loan, the nature and content of these emails belie any

6   notions of deception, and the communications make clear that Fountainhead might

7   not have been able to fund the loan.

8            Fountainhead's Tweets are similarly innocuous. *See* Cmpl. at ¶¶ 17–21, 24.

9   Several of these Tweets, for example, contain objective, non-actionable

10  representations (or statements of opinion), including: that Fountainhead would be

11  "tackling the loan inquiries lined up in [its] queue" (*id.* at ¶ 17), that the private

12  sector could process PPP applications more efficiently than the SBA (*id.* at ¶¶ 18–

13  19), that Fountainhead is "able" to approve loans "within a few hours," which is

14  faster than the SBA's normal timeline of "about three to four weeks" (*id.*), that non-

15  bank lenders (like Fountainhead) could process applications more efficiently than

16  banks (*id.*), and that potential borrowers should proceed to apply with Fountainhead

17  (*id.* at ¶¶ 20–21). The Plaintiff also attempts to seize on a Tweet, which states: "We

18  require not [sic] prior relationship, no special (money-making) criteria, and are

19  processing first come, first serve . . . no prioritization." *Id.* at ¶ 24 (internal quotation

20  marks omitted). Despite the conspiratorial undertones of the Complaint, this Tweet

21  captured the essence of Fountainhead's processing system, under which it attempted,

22  in good faith and to the extent possible, to review and process PPP applications in

23  order of receipt (despite having no legal obligation to do so under the PPP).

24           These Tweets (and the related communications) would not have misled a

25  "reasonable consumer." Indeed, such a consumer would have understood that it is

26  virtually impossible for a lender to process applications in a literal "queue," without

27  regard for external forces like the applicant's continued cooperation in the

28  application process, the applicant's eligibility for a loan, and other extensive

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-24-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  regulatory strictures applicable to lenders. Customers at a deli counter who receive a

2  number as they enter the store may expect to be served on a first come, first served

3  basis, but a lender is not a deli counter. No reasonable consumer would understand

4  Fountainhead's Tweets or communications to mean that the first entity to submit an

5  expression of interest necessarily would be the first to obtain a loan.

6      Because all of the predicate violations alleged in Count II are legally

7  defective for the independent reasons described above, the Plaintiff's claim under

8  the UCL's "unlawful" prong fails as a matter of law.

9          **c.    The Plaintiff's Claim Under the "Fraudulent" Prong**

10                **Fails as a Matter of Law Because, Among Other**

11                **Reasons, Fountainhead Did Not Owe a Duty to Disclose**

12      A "fraudulent" prong UCL claim requires "a showing that members of the

13  public are likely to be deceived" by the challenged practice, and "[t]he determination

14  as to whether a business practice is deceptive is based on the likely effect such [a]

15  practice would have on a reasonable consumer." *Copart, Inc. v. Sparta Consulting,*

16  *Inc.*, 339 F. Supp. 3d 959, 987 (E.D. Cal. 2018) (internal quotation marks omitted)

17  (alterations in original). Paragraph 58 of the Complaint contains the entirety of the

18  Plaintiff's allegations regarding the UCL's "fraudulent" prong:

19          Defendant's fraudulent conduct includes, but is not limited
            to, representing that it would process PPP applications,
20          that Plaintiff and class members were in the queue for
            priority, and that help was on the way, without disclosing
21          that Defendants were not licensed to do these loans, did
            not have adequate capitalization, and were prioritizing
22          high value or favored PPP loans.

23      Yet again, totally absent from the Complaint is the key allegation necessary to

24  support a claim under the "fraudulent" prong: that the communications upon which

25  the Plaintiff relies were "likely to deceive" reasonable consumers. This defect,

26  alone, allows the Court to dismiss the Plaintiff's claim under the "fraudulent" prong.

27  *See Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *12 (N.D. Cal. Apr.

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-25-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

25, 2012) (explaining that "[i]n order to state a cause of action under the fraud prong of the UCL a plaintiff must show that members of the public are likely to be deceived," and dismissing the plaintiff's claim for failure to plead probability of deception).

Also, as with the Plaintiff's federal false advertising theory, the Court should dismiss the "fraudulent" claim on the ground that it is implausible that the relevant communications were "likely to deceive" reasonable consumers. *See Warner*, 105 F. Supp. 3d at 1092.

The only communications on which the Plaintiff relies in connection with the "fraudulent" prong are: (i) Fountainhead's representations that it would process PPP loan applications, (ii) emails explaining that the Plaintiff's indication of interest was in Fountainhead's internal "queue" for processing, and (iii) an email confirming that Fountainhead had received the Plaintiff's indication of interest and that "help" was on the way. Cmpl. at ¶ 58. And, although not specifically mentioned in the paragraphs of Count II, Fountainhead's final email to the Plaintiff, on April 13, 2020, asked for the Plaintiff's "patience" as Fountainhead worked to process a backlog of applications and advised: "Should you feel the need to remove yourself from our loan queue and join another lender's list, kindly let us know . . . so we may continue to prioritize our list." *Id.* at ¶ 29 (internal quotation marks omitted). These communications – none of which promised a loan, and one of which indicated that it might not be feasible for Fountainhead to fulfill every applicant's request, given the "demand surge" for PPP loans – are not the types of communications that would "probably" mislead a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." *See, e.g.*, *whiteCryption Corp. v. Arxan Techs., Inc.*, 2016 WL 3275944, at *6 (N.D. Cal. June 15, 2016).

And even if the Court were to ignore these defects, it would find another, even more compelling reason to dismiss the Plaintiff's "fraudulent" prong claim.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1216971.01/LA

-26-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   Here, the essence of the Plaintiff's claim is that Fountainhead made the relevant

2   representations without disclosing its lack of a license, its allegedly inadequate

3   funding, and its alleged "prioritization" practices. Cmpl. at ¶ 58. But California

4   courts have held that "[a]bsent a duty to disclose, the failure to do so does not

5   support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Prop.*

6   *Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (Cal. Ct. App. 4th Dist. 2007). "This is

7   because a consumer is not 'likely to be deceived' by the omission of a fact that was

8   not required to be disclosed in the first place." *Buller v. Sutter Health*, 160 Cal. App.

9   4th 981, 987 (Cal. Ct. App. 1st Dist. 2008). As discussed in Section II(B)(iii), above,

10  Fountainhead did not owe a duty to disclose its lack of a license or its internal

11  lending methodology.

12         **d.    The Plaintiff Fails to Sufficiently Allege Why**

13                **Fountainhead's Practices Were "Unfair"**

14         Finally, with respect to the UCL's "unfair" prong, the Plaintiff alleges that

15  Fountainhead's "unfair conduct includes . . . failing to disclose there [sic] lack of a

16  license or a funding facility, and that they were prioritizing large or favored loans, to

17  enrich itself, at the expense of smaller businesses getting timely PPP loan funding."

18  Cmpl. at ¶ 59. In cases like this one, "the proper definition of 'unfair' conduct . . . is

19  currently in flux among California courts." *In re Solara Med. Supplies, LLC*

20  *Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *11 (S.D. Cal. May 7,

21  2020) (internal quotation marks omitted). Two main approaches have emerged – the

22  "tethering" test and the "balancing" test – and Fountainhead's alleged disclosure

23  failures were not "unfair" under either definition.

24         The "tethering" test "requires allegations that the challenged conduct violates

25  a 'public policy' that is 'tethered' to a specific constitutional, statutory, or regulatory

26  provision." *Doe v. Epic Games, Inc.*, 2020 WL 376573, at *15 (N.D. Cal. Jan. 23,

27  2020). The "balancing" test, by contrast, "asks whether the alleged practice is

28  immoral, unethical, oppressive, unscrupulous, or substantially injurious to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-27-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    consumers," and it "requires the court to weigh the utility of the defendant's conduct
2    against the gravity of the harm to the alleged victim." *Johnson v. Winco Foods,*
3    *LLC*, 2018 WL 6017012, at *21 (C.D. Cal. Apr. 2, 2018).

4        In the Complaint, the Plaintiff fails to specify the approach under which it is
5    traveling, but a UCL cause of action is not supportable under either approach. As to
6    the "tethering" test, the Plaintiff cannot establish that Fountainhead's practices were
7    "unfair" because, under the CARES Act, private lenders are not required to process
8    loan applications in any particular manner, and because the CFL did not require a
9    license for Fountainhead's alleged "solicitations" and "advertisements" through the
10   Internet. *See* Sections II(B)(i) and (ii), above. Fountainhead's alleged disclosure
11   failures, then, did not violate any public policy "tethered" to these laws and
12   regulations.

13       That leaves the "balancing" test. With respect to this approach, the Plaintiff
14   makes no allegations – indeed, not even conclusory assertions – about why
15   Fountainhead's purported disclosure failures were "immoral, unethical, oppressive,
16   or unscrupulous" or why the gravity of the Plaintiff's harm outweighs the utility of
17   Fountainhead's conduct. *See Johnson*, 2018 WL 6017012, at *21. This deficiency
18   allows the Court to dismiss the "unfair" prong claim. *Cf., e.g., Palmer v. Apple Inc.*,
19   No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016)
20   (dismissing a claim under the "unfair" prong when, although the plaintiff had made
21   boilerplate allegations related to the "balancing" test, the plaintiff failed to allege
22   sufficient facts to show why the defendant's conduct was "unfair").

23         **v.**    **Count III Fails to State a Claim for Violation of the FAL**
24                **Because of Several Pleading and Substantive Deficiencies**

25       Count III asserts a cause of action for "false advertising" in violation of the
26   FAL, Cal. Bus. & Prof. Code § 17500 *et seq.* To state a claim under the FAL, a
27   plaintiff must allege that (i) the statements in the advertisements were untrue or
28   misleading and (ii) the defendant knew, or should have known, that the statements

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-28-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  were untrue or misleading. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d

2  861, 873 (N.D. Cal. 2012). The plaintiff must also allege that the relevant statements

3  were "likely to deceive" reasonable consumers. *Loomis v. Slendertone Distribution,*

4  *Inc.*, 420 F. Supp. 3d 1046, 1080 (S.D. Cal. 2019) (citing *Williams v. Gerber Prods.*

5  *Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Count III suffers from a number of pleading

6  and substantive defects.

7         As an initial matter, the entirety of Count III is simply boilerplate lifted from

8  the statutory text, precisely the type of "formulaic recitations" forbidden under the

9  Supreme Court's pleading standards. *See* Cmpl. at ¶¶ 63–64; Section II(A)(i), above

10  (citing authorities). Second, Rule 9(b) applies to Count III, because the Plaintiff

11  alleges that Fountainhead engaged in knowingly false advertising. *See* Cmpl. at ¶

12  64; *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*

13  *Television Litig.*, 758 F. Supp. 2d at 1093. Yet, the Plaintiff fails to plead Count III

14  with particularity, and even neglects to list or describe the allegedly offending

15  "advertisements." Third, as with the other claims to which the "reasonable

16  consumer" test applies, the Plaintiff fails to allege that Fountainhead's

17  "advertisements" were "likely to deceive" reasonable consumers. *See Loomis*, 420 F.

18  Supp. 3d at 1080. Any one of these pleading defects allows the Court to dismiss

19  Count III.

20         Even beyond these pleading defects, the Plaintiff's theory ostensibly

21  supporting its "false advertising" cause of action is substantively misguided. First, as

22  noted above, Fountainhead's emails to the Plaintiff are not "advertisements" within

23  the meaning of § 17500 (or within a common understanding of the term). The

24  advertising vehicles referenced in the statute – newspapers, publications, advertising

25  devices, public outcries – suggest the necessity of widespread dissemination to the

26  public at large as a precondition to liability. *See, e.g.*, *Cargill Inc. v. Progressive*

27  *Dairy Sols., Inc.*, 2008 WL 2235354, at *16 (E.D. Cal. May 29, 2008); *Ellis*, 2013

28  WL 5935412, at *13 (explaining, in the context of a federal false advertising claim,

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-29-

1216971.01/LA

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  that an "advertisement" requires "widespread promotional activities directed to the

2  public at large"). Accordingly, the individualized emails that the Plaintiff identifies

3  in the Complaint (*see* Cmpl. at ¶¶ 28–30) are not "advertisements" under the FAL.

4  In any event, even if the Court were to consider these emails and Fountainhead's

5  Tweets, the Plaintiff's FAL claim fails because the relevant communications were

6  not misleading as a matter of law, for the reasons discussed fully in Section

7  II(B)(iv)(b).

8         Finally, even if the Plaintiff could somehow overcome all of these

9  deficiencies, Count III would still fail on the merits because, as the Ninth Circuit

10  recently held, there is no liability under the FAL absent a duty to disclose. *See*

11  *Hodson v. Mars, Inc.*, 891 F.3d 867–68 (9th Cir. 2018) ("Whether an advertisement

12  is misleading is determined by asking whether a reasonable consumer would likely

13  be deceived. . . . Plaintiff's FAL claims fail because a failure to disclose a fact one

14  has no affirmative duty to disclose is [not] 'likely to deceive' anyone." (internal

15  citation and quotation mark omitted) (alteration in original)). Because Fountainhead

16  did not have a duty to disclose its lending practices or its lack of a license before

17  April 21, 2020 (*see* Section II(B)(iii)), the Plaintiff's FAL claim, which is predicated

18  on purported omissions, is legally defective and is subject to dismissal with

19  prejudice.

20  **III.    CONCLUSION**

21         For the above reasons, Fountainhead respectfully requests that the Court

22  dismiss the Complaint with prejudice. Fountainhead also requests that the Court

23  order any further relief that it believes proper.

24  //

25  //

26  //

27  //

28  //

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1216971.01/LA

-30-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other signatories listed concur in this filing's content and have authorized this filing.

Dated: August 14, 2020

Respectfully submitted,

**SHUTTS & BOWEN LLP**
200 S. Biscayne Blvd., Ste. 4100
Miami, Florida 33131
Tel: (305) 358-6300
*Attorneys for Fountainhead SBF LLC and Fountainhead Commercial Capital, LLC*

By: /s/ *Daniel T. Stabile*
Daniel T. Stabile
dstabile@shutts.com
(Admitted *pro hac vice*)


**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
865 S. Figueroa St., Ste. 2800
Los Angeles, California 90017
Tel: (213) 622-5555
*Attorneys for Fountainhead SBF LLC and Fountainhead Commercial Capital, LLC*

By: /s/ *Michael R. Farrell*
Anthony J. Oliva (Bar No. 123971)
toliva@allenmatkins.com
Michael R. Farrell (Bar No. 173831)
mfarrell@allenmatkins.com
Stacey A. Villagomez (Bar No. 317081)
svillagomez@allenmatkins.com

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

1216971.01/LA

-31-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT