ANTHONY J. OLIVA (BAR NO. 123971)
MICHAEL R. FARRELL (BAR NO. 173831)
STACEY A. VILLAGOMEZ (BAR NO. 317081)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  toliva@allenmatkins.com
         mfarrell@allenmatkins.com
         svillagomez@allenmatkins.com

DANIEL T. STABILE
SHUTTS & BOWEN LLP
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Phone:  (305) 415-9063
Fax:  (305) 347-7714
E-mail: DStabile@shutts.com
Appearing Pro Hac Vice

Attorneys for Defendants
FOUNTAINHEAD SBF LLC and
FOUNTAINHEAD COMMERCIAL
CAPITAL, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH M. BYRNES, INC., a corporation, on behalf of itself and all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FOUNTAINHEAD COMMERCIAL CAPITAL, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:20-cv-04149-DDP (RAOx)<br><br>**DEFENDANTS FOUNTAINHEAD SBF LLC'S AND FOUNTAINHEAD COMMERCIAL CAPITAL, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   September 14, 2020<br>Time:  10:00 a.m.<br>Judge Hon. Dean D. Pregerson<br>Ctrm: 9C |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................1

II.  ARGUMENT .............................................................................4

    A.   The Court May Properly Consider the Entirety of the Communications that the Plaintiff Failed to Attach to the Complaint ...............................................................................4

    B.   The Plaintiff's Theories of Recovery Are Fundamentally Defective ..................................................................................5

    C.   Count I (Fraudulent Concealment) Fails as a Matter of Law Because Fountainhead Did Not Owe a Duty to Disclose and Because There Was No Justifiable Reliance ................10

    D.   Counts II and III Are Also Legally Defective .....................14

        i.   The Plaintiff Failed to Plead the Lack of An Adequate Remedy at Law, So the Equitable Statutory Claims Are Subject to Dismissal Under Sonner ..................................................................14

        ii.  Count II Fails to State a Claim Under Any Prong of the UCL........................................................................16

        iii. Count III Fails to State a Claim for a Violation of the FAL, for Several Reasons....................................19

III. CONCLUSION ........................................................................19

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-2-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Balzer v. Wal-Mart Stores, Inc.*,
   2015 WL 13828418, at *3 (C.D. Cal. Feb. 25, 2015) ................................... 16

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (4th Dist. 2007) ...................................................... 18

*Buller v. Sutter Health*,
   160 Cal. App. 4th 981 (1st Dist. 2008) ......................................................... 18

*Burch v. CertainTeed Corp.*,
   34 Cal. App. 5th 341 (1st Dist. 2019) ........................................................... 11

*F.D.I.C. v. Tarkanian*,
   2010 WL 3932074, at *7 (S.D. Cal. Oct. 5, 2010) ........................................ 12

*Hernandez v. Wells Fargo & Co.*,
   2019 WL 3891342, at *4 (N.D. Cal. Aug. 19, 2019) ............................... 11, 12

*Hodson v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................... 19

*In re Tobacco Cases II*,
   240 Cal. App. 4th 779 (4th Dist. 2015) ......................................................... 15

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................... 15

*Mackell v. Wells Fargo Home Mortg.*,
   2017 WL 373077, at *7 (N.D. Cal. Jan. 26, 2017) ........................................ 11

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ........................................................................... 5

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
   2010 WL 11460004, at *3 (C.D. Cal. May 13, 2010) .................................... 13

*N.K. Collins, LLC v. William Grant & Sons, Inc.*,
   2020 WL 4043976 (D. Haw. July 17, 2020) .................................................. 16

*Nymark v. Heart Fed. Sav. & Loan Assn.*,
   231 Cal. App. 3d 1089 (3d Dist. 1991) ......................................................... 11

*Palmer v. Apple Inc.*,
   2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) ...................................... 19

*Profiles, Inc. v. Bank of Am. Corp.*,
   2020 WL 1849710 (D. Md. Apr. 13, 2020) ............................................ 6, 7, 8

*Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*,
   157 F. App'x 959 (9th Cir. 2005) .................................................................. 16

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

**Page(s)**

*Romero v. Countrywide Home Loans, Inc.,*
 2011 WL 445956, at *4 (N.D. Cal. Feb. 3, 2011)..........................................12

*Sonner v. Premier Nutrition Corp.,*
 2020 WL 4882896 (9th Cir. June 17, 2020) ....................................14, 15, 16

*Warner v. Tinder Inc.,*
 105 F. Supp. 3d 1083 (C.D. Cal. 2015)........................................................18

*Wright v. Allstate Ins. Co. of California,*
 2015 WL 1548949, at *2 (N.D. Cal. Apr. 7, 2015) .........................................5

**Statutes**

Coronavirus Aid, Relief, and Economic Security (CARES) Act.................3, 6, 7, 8

15 U.S.C. § 52(a) ...............................................................................16, 17

Cal. Fin. Code § 22100(a)....................................................................9, 16

Cal. Fin. Code § 22162(a)..........................................................................9

CARES Act § 1102(a)(2)...........................................................................7

**Rules**

Rule 5-4.3.4(a)(2)(i).................................................................................19

Interim Final Rule § 2m....................................................................7, 8, 16, 18

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

-4-

1218505.01/LA

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

The Defendants, Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC (collectively, "**Fountainhead**"), submit their Reply Memorandum of Law in further support of their Motion to Dismiss the First Amended Class Action Complaint (D.E. 23) (together with the supporting Memorandum of Points and Authorities (D.E. 23-1), the "**Motion to Dismiss**").[1]

## I.    INTRODUCTION

Fountainhead is a non-bank lender authorized to make PPP loans. On March 28, 2020, several days before the SBA E-Tran Portal was opened and before the Final PPP Application and Interim Final Rule were issued, the Plaintiff submitted to Fountainhead, through Fountainhead's website, an expression of interest for a PPP loan. Like so many other lenders, Fountainhead was inundated with such requests. And given the overwhelming interest in the PPP program, Fountainhead – like virtually all qualified lenders, including many of the largest financial institutions in the world, with vastly more resources than Fountainhead[2] –received far more applications than it could underwrite, process, and submit to the SBA for final approval.[3]

Given the nature of the PPP program, through which potential borrowers could have sought a PPP loan through nearly 5,500 different participating lenders, many potential borrowers submitted applications for PPP funding through multiple qualified lenders. And, although the Plaintiff did not ultimately obtain a PPP loan

---

[1]   Unless otherwise noted, capitalized terms and acronyms in this Reply Memorandum have the meaning ascribed to them in the Motion to Dismiss.

[2]   Fountainhead itself is a small business, with fewer than thirty employees.

[3]   Fountainhead is proud to have assisted more than 8,200 small businesses obtain financing through the PPP program with an average loan size of less than $94,000.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

_____
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

through Fountainhead, the Plaintiff does not dispute that it submitted application materials to at least one other lender and **actually obtained a PPP loan**. Nevertheless, and despite the fact that the only specific tangible damages alleged are "copying and printing costs," the Plaintiff has brought this putative class action lawsuit against Fountainhead, seeking punitive damages and attorney's fees, among other relief.

The initial Complaint in this action was entirely predicated on the erroneous notion that a qualified lender is required to process and underwrite PPP applications in the exact order in which the applications are received. But, as the only court to have addressed this issue has held, there is no such requirement. PPP lenders are not required underwrite any PPP loans or process them in any particular order. In fact, it is well documented that PPP lenders have "prioritized" applicants in myriad ways, including by prioritizing existing customers, veteran-owned businesses, and businesses from certain geographic regions.

Rather than opposing Fountainhead's motion to dismiss the initial Complaint, the Plaintiff opted to file an amended Complaint. Although this next iteration of the Complaint retains the same erroneous "prioritization" theory, it adds two other concepts: that Fountainhead was not "licensed" in California and that it was "inadequately funded." These new theories are also deeply flawed. As the Plaintiff concedes, Fountainhead was duly licensed to make PPP loans in California prior to issuing any such loans. In the face of this impediment, the Plaintiff claims that Fountainhead SBF LLC was required to obtain a license before even posting educational Tweets or sending other communications that incidentally happened to reach some Californians (though they were directed nationwide). There is no requirement to obtain a license for this type of activity, and it borders on the absurd to suggest that any lender anywhere in the world must obtain a California lender's license before posting to social media. As to its funding theory, as described in more detail below, the Plaintiff simply asserts, "on information and belief," that

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-2-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   Fountainhead had to improperly prioritize certain applicants because it was

2   inadequately funded to process all applicants. But the Court should reject this theory

3   because it is not required to accept the Plaintiff's conclusory allegations regarding

4   Fountainhead's funding capacity and, even more to the point, Fountainhead's

5   financial capacity (which was more than sufficient) is irrelevant because the alleged

6   "prioritization" does not violate the CARES Act.

7        As to the formal causes of action themselves, the Motion to Dismiss discusses

8   myriad deficiencies, and the Opposition does not persuasively refute (or, in some

9   important instances, even attempt to address) these deficiencies. For example, with

10  respect to Count I for fraudulent concealment, the Motion to Dismiss explains that

11  the lender/borrower relationship does not give rise to a duty of disclosure that is a

12  key predicate to a fraudulent concealment cause of action. In its Opposition, the

13  Plaintiff quotes the general rule that some entities are required to disclose certain

14  information to counterparties (e.g., if the party has "exclusive knowledge"), but fails

15  to confront the more specific case law discussed in the Motion to Dismiss providing

16  that a lender is not the type of entity that has such a disclosure obligation. Lenders

17  have "exclusive knowledge" of many facts, like their internal underwriting

18  methodology, but are not required to (and generally do not) provide this information

19  to borrowers or prospective borrowers.

20       Counts II and III attempt to plead violations of the UCL and FAL,

21  respectively. The Court should dismiss these claims with prejudice under the recent

22  Ninth Circuit *Sonner* decision, which requires dismissal of equitable counts where

23  the plaintiff fails to plead an inadequate remedy at law. In the context of this

24  litigation, the analysis is not complex. The Plaintiff concedes, as it must, that the

25  only remedies available under Counts II and III are injunctive relief and restitution.

26  But the Plaintiff alleged that Fountainhead stopped making PPP loans (and the PPP

27  application window has closed), so there is nothing to enjoin. With respect to

28  restitution, that remedy requires money or property lost by a plaintiff that has

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

-3-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  enriched the defendant, but the Plaintiff never provided any money or property to

2  Fountainhead (and never even submitted a loan application), so there is nothing for

3  Fountainhead to "restore." The Plaintiff's effort to address this point – a citation to

4  an inapplicable District of Hawaii decision and a string citation to pre-*Sonner* cases

5  indicating that plaintiffs can plead claims in the alternative – falls flat.

6      In this, the second iteration of the Complaint, the Plaintiff has been unable to

7  remedy the deficiencies of the initial Complaint. This is not surprising because the

8  core theories are fundamentally defective and incapable of being cured. The

9  Complaint should be dismissed with prejudice.

10 **II.    ARGUMENT**

11     **A.    The Court May Properly Consider the Entirety of the**

12            **Communications that the Plaintiff Failed to Attach to the**

13            **Complaint.**

14     Before turning to the substance of the Opposition, Fountainhead wishes to

15 first address the Plaintiff's position that the Court cannot consider the entirety of the

16 communications that were submitted in support of Fountainhead's Motion to

17 Dismiss.

18     In the Complaint, the Plaintiff cites and quotes from several Fountainhead

19 emails in support of its claims. *See, e.g.*, Cmpl. at ¶¶ 28–29. Rather than attaching

20 these purportedly material emails to its pleading or providing the necessary textual

21 context, the Plaintiff opts to selectively quote excerpts of the communications. To

22 provide the Court with the appropriate textual context, Fountainhead submitted, in

23 connection with its Motion to Dismiss, complete copies of the referenced

24 communications. *See* Farrell Decl., Exs. 1–3 (D.E. 23-2). Now, despite the centrality

25 of these emails to the Plaintiff's theories of recovery, the Plaintiff criticizes

26 Fountainhead for providing the Court with this "extrinsic evidence," and requests

27 that the Court "simply ignore the declaration and evidence submitted by counsel . . .

28 ." Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Class

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-4-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  Action Complaint (the "**Opposition**") (D.E. 24) at pp. 17–18. The Plaintiff is
2  mistaken, and the Court may properly consider Fountainhead's emails in resolving
3  the Motion to Dismiss.

4      Although the Court is generally restricted to the "four corners" of a complaint
5  at the motion to dismiss stage (*see id.* at p. 17), the incorporation-by-reference
6  doctrine presents an important and well-recognized exception to this general rule.
7  *See* Motion to Dismiss at p. 3 n.8 (citing Ninth Circuit authority). Under that
8  doctrine, the Court may properly consider "extrinsic evidence" on a motion to
9  dismiss when the following conditions are present: "(1) the complaint refers to the
10  document; (2) the document is central to the plaintiff's claim; and (3) no party
11  questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v.*
12  *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (collecting cases); *see also, e.g.*, *Wright v.*
13  *Allstate Ins. Co. of California*, 2015 WL 1548949, at *2 (N.D. Cal. Apr. 7, 2015)
14  (explaining that, when the plaintiff fails to attach key documents referenced in the
15  complaint, "a defendant may attach to the motion to dismiss such documents in
16  order to show that they **do not support** the plaintiff's claim" (emphasis added)).

17      Here, the incorporation-by-reference doctrine allows the Court to consider the
18  entirety of Fountainhead's emails because: (i) the Complaint refers to the
19  communications (*see, e.g.*, Cmpl. at ¶¶ 28–29), (ii) the emails are central to the
20  Plaintiff's substantive claims (*see, e.g.*, *id.* at ¶ 48), and (iii) the Plaintiff has not
21  questioned (and cannot seriously question) the authenticity of the copies attached to
22  the Motion to Dismiss. *See Marder*, 450 F.3d at 448. The Court should thus consider
23  the emails in resolving the Motion to Dismiss. As discussed further below, the
24  complete communications – in proper context, and without selective quotation –
25  contradict the Plaintiff's notions of "concealment" and "reliance."

26      **B.**    **The Plaintiff's Theories of Recovery Are Fundamentally Defective.**
27      In the Motion to Dismiss, Fountainhead distilled (and then debunked) the
28  Plaintiff's three essential theories of recovery: (i) that Fountainhead "prioritized"

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1218505.01/LA

-5-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  higher-value and "favored" loans in alleged violation of the CARES Act, (ii) that

2  Fountainhead lacked adequate funding for its PPP initiative, and (iii) that

3  Fountainhead SBF LLC (the only defendant involved in PPP lending) did not obtain

4  a finance lender's license until April 21, 2020. *See, e.g.*, Motion to Dismiss at pp.

5  10–14. These theories animate all of the Plaintiff's substantive causes of actions, for

6  fraudulent concealment (Count I) and for violation of two California consumer

7  protection statutes (Counts II and III). *See* Cmpl. at Counts I–III. In the Opposition,

8  the Plaintiff fails to meaningfully distinguish Fountainhead's cited authorities, or to

9  offer any persuasive justification for why the Court should accept the Plaintiff's

10  theories.

11      With respect to the Plaintiff's theory of unlawful "prioritization,"

12  Fountainhead demonstrated that, although the CARES Act codifies baseline

13  eligibility requirements, the legislation obviously does not require lenders to process

14  PPP applications on a "first come, first served" basis. Motion to Dismiss at pp. 10–

15  12 (citing, among other authorities, *Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL

16  1849710 (D. Md. Apr. 13, 2020)). The Plaintiff argues that *Profiles, Inc.* "provides

17  no assistance to Defendants" because the lending practices and "legal issue" were

18  different than those here. Opposition at pp. 11–12. These purported distinctions,

19  however, do not affect the decision's analysis of the CARES Act, under which the

20  Plaintiff's "prioritization" theory is simply untenable.[4]

21      In *Profiles, Inc.*, Bank of America restricted its PPP initiative to two classes

22  of borrowers: those that had an existing borrowing relationship with the bank and

23  those that had an existing depository relationship with the bank and no borrowing

24

25  _____

26  [4]   The Plaintiff also asserts that "*Profiles* involved a TRO, an entirely different standard and procedural posture" than this matter (Opposition at p. 12), but this position ignores that, under the TRO analysis, the District of Maryland was

27  required to analyze the plaintiffs' likelihood of success on the merits. *Profiles, Inc.*, 2020 WL 1849710, at *3–*8. As discussed above, under this prong of the TRO analysis, the court held that Bank of America did not violate the CARES

28  Act.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

-6-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  relationship with any other bank. *Profiles, Inc.*, 2020 WL 1849710, at *2. The

2  plaintiffs asserted that these "gating requirements" violated the CARES Act. *Id.* at

3  *3. After determining that the CARES Act does not confer a private right of action,

4  the court held that Bank of America's eligibility requirements did not, in any event,

5  violate that legislation. *Id.* at *4–*8. In reaching this holding, the court examined the

6  text, structure, and legislative history of the CARES Act and explained that lenders

7  have significant flexibility in administering their PPP initiatives. *See id.* at *4, *7–

8  *8. As relevant here, the court determined:

9
10  • That "[n]either the CARES Act nor the Interim Final Rule imposes prohibitions on what lenders may do in their processes for accepting or processing applications,"

11
12  • That the language of § 1102(a)(2) of the CARES Act "does not constrain banks such that they are prohibited from considering other information when deciding from whom to accept applications, **or in what order to process applications it accepts**," and

13
14  • That, "[g]iven the plain statutory language" of the CARES Act, "the Court is not at liberty to impose further limitations on lenders."

15  *Id.* (emphasis added). The court's interpretation of the CARES Act – equally

16  applicable here – dispenses with the Plaintiff's notion that the legislation prohibited

17  lenders, like Fountainhead, from processing PPP applications in a manner that

18  "prioritized" certain loans. Indeed, the District of Maryland acknowledged that

19  "numerous other financial institutions have imposed additional eligibility

20  requirements, beyond the two identified" in § 1102(a)(2), and that some lenders

21  have "focused" on processing loans for specific classes of borrowers. *Id.* at *8.

22      The Plaintiff's "prioritization" theory hinges entirely on an undeveloped

23  statement in the Interim Final Rule that the PPP is "first-come, first-served." *See*

24  Interim Final Rule § 2m. This exact argument was presented to, and rejected by, the

25  court in *Profiles, Inc.* In response to Fountainhead's position, articulated in the

26  Motion to Dismiss, that this statement applies **to the SBA** (*i.e.*, the SBA must

27  process and – if appropriate, ultimately approve – the applications submitted by the

28  many qualified lenders on a first-come, first-serve basis) and not the private lenders

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-7-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

facilitating the loans (*see, e.g.*, Motion to Dismiss at pp. 5–6), the Plaintiff asserts that § 2m expressly "does not except lenders from the rule." Opposition at p. 12. Section 2m, of course, does not **include** private lenders in the rule, either. Nor does the rule otherwise suggest that the "first come, first served" principle requires lenders to process PPP applications in a literal "queue." In fact, as the District of Maryland recognized, "[t]he Interim Final Rule **lists a number of reasons why an applicant may be deemed 'ineligible'** for a PPP loan." *Profiles, Inc.*, 2020 WL 1849710, at *4 (emphasis added). So, the Interim Final Rule itself contemplates factors that would make it impossible for lenders to process applications in an uninterrupted, perfectly sequential "queue."

The Plaintiff's second theory – that Fountainhead lacked adequate funding – is an afterthought in the amended Complaint. This subsidiary theory seriously misunderstands the operation of private lending markets, in which it is customary for lenders like Fountainhead to obtain periodic third-party infusions to facilitate loans. The Plaintiff's "inadequate funding" narrative is also factually misguided because, to date, Fountainhead has been able to originate and fund approximately $767,000,000 in PPP loans. The Court may properly reject this theory at the pleading stage, for at least two reasons.

First, as with other key assertions in the Complaint, the Plaintiff makes its "inadequate funding" allegations solely on "information and belief" (*see, e.g.*, Cmpl. at ¶ 26), and the Court is not required to accept such conclusory statements. *See* Motion to Dismiss at pp. 8–9 (citing authorities). Second, the Plaintiff has pleaded a nexus between Fountainhead's alleged "prioritization" practices and inadequate funding, asserting that Fountainhead "prioritized" certain loans "because" it lacked sufficient funding. *See, e.g.*, Cmpl. at ¶¶ 22, 26, 27, 31, 32. Because Fountainhead's alleged "prioritization" practices do not violate the CARES Act as a matter of law, the underlying rationale for those practices is immaterial.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-8-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1      Finally, with respect to the Plaintiff's licensing theory, Fountainhead

2  explained why the CFL's licensing requirement applies only to loan-making

3  activities, and not to the allegedly offending conduct described in the Complaint:

4  postings on social media and emails that happened to reach some Californians.

5  Motion to Dismiss at pp. 12–14. The Plaintiff does not dispute that Fountainhead

6  SBF LLC did not make any PPP loans in California before it obtained a license on

7  April 21, 2020. *See* Opposition at pp. 9–10. Instead, the Plaintiff cites Cal. Fin.

8  Code § 22162(a) for the proposition that "in order to advertise loan applications, you

9  must have a license." *Id.* at p. 9 (emphasis omitted). But the plain text of the statute

10 contradicts the Plaintiff's position because the statute applies only to: (i) "licensees"

11 and (ii) "advertisement[s] **disseminated primarily in this state** . . . ." § 22162(a)

12 (emphasis added). This statute refutes the Plaintiff's position because, at the time of

13 Fountainhead's Tweets and emails, Fountainhead was not (and did not need to be) a

14 "licensee" under the CFL, and because Fountainhead's communications were not, in

15 any event, "disseminated primarily" in California. The Tweets, for example, are

16 social media postings viewable in most parts of the world to anyone with an Internet

17 connection and a device with the capacity to connect to the Internet.[5]

18     Ultimately, the Plaintiff fails to articulate a persuasive justification for why

19 the CFL's licensing requirement can apply to Fountainhead's "solicitations" and

20 "advertisements." The Plaintiff posits that, through these communications,

21 "Defendants were engaging in the business of lending with Plaintiff." Opposition at

22 p. 9; *see also* Cal. Fin. Code § 22100(a). But the CFL as a whole, including its

23 exemptions, demonstrates that the purpose of the licensing requirement is to regulate

24 actual loan-making activities in California, in which Fountainhead indisputably did

25 not engage during the unlicensed period. *See* Motion to Dismiss at pp. 12–14. And

26

27 ───────────────

28 [5]   Moreover, the statute expressly applies only to California "licensees," but
       Fountainhead was not – and was not required to be – a licensee.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-9-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

as a matter of policy, the Plaintiff's reading of the licensing scheme would impose enormous costs and extensive liability, because it would require lenders located anywhere in the world to obtain a license before posting a single Tweet about a lending initiative, simply because someone in California may see the Tweet. *See id.*; *see also* Opposition at p. 9. The licensing requirement does not apply to the conduct alleged in the Complaint.[6]

These misguided theories set the stage for the Plaintiff's substantive counts, each of which fails to state a claim for the additional reasons discussed below.

### C.   Count I (Fraudulent Concealment) Fails as a Matter of Law Because Fountainhead Did Not Owe a Duty to Disclose and Because There Was No Justifiable Reliance.

In the Motion to Dismiss, Fountainhead explained that Count I, which the Plaintiff now agrees is a cause of action for common law fraudulent concealment (despite the ambiguity in the Complaint), is mired by two incurable legal defects. First, Fountainhead noted that, under the facts alleged in the Complaint, Fountainhead did not have a duty to disclose its alleged "prioritization" practices, insufficient funding, or lack of a license. Motion to Dismiss at pp. 15–17. Second, Fountainhead explained that, given the nature and content of the relevant communications, it was implausible for the Plaintiff to have "justifiably" relied on Fountainhead's statements. *Id.* at pp. 17–18. The Plaintiff insists that it "adequately pled" its fraudulent concealment claim (Opposition at p. 5), but the legal theories underlying this count are irreparably misguided.

---

[6]   As to the Plaintiff's assertion that "[i]t was wholly fraudulent and deceptive to solicit applications" during the unlicensed period (Opposition at p. 10), Fountainhead has fully rebutted that notion. *See* Motion to Dismiss at pp. 12–15. The Plaintiff's position, as discussed in the Motion to Dismiss, ignores the reality that Fountainhead did not specifically direct its PPP initiative or any communications to Californians. *See id.* And, the Plaintiff's position would also require the Court to impose a tort duty of disclosure when Fountainhead did not violate the statutory obligation on which the duty is purportedly based. *See id.* These defects are fatal to any notions of "fraudulent concealment," deception, misrepresentation, or false advertising.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

With respect to Fountainhead's purported duty to disclose, the Plaintiff never meaningfully addresses the principle that, absent "special circumstances," lenders do not owe borrowers any disclosure duty. *See* Motion to Dismiss at pp. 16–17 (citing cases). Instead, the Plaintiff relies on, and argues that it sufficiently pleaded, three prototypical circumstances in which California courts have imposed a duty to disclose: "exclusive knowledge," "active concealment," and "half-truths." Opposition at pp. 6–8. These three circumstances, however, "**presuppose the existence of some other relationship between the plaintiff and defendant** in which a duty to disclose can arise." *Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341, 349 (1st Dist. 2019), *reh'g denied* (May 10, 2019) (internal quotation marks and alteration omitted) (emphasis added).

As Fountainhead briefed in the Motion to Dismiss, the normal lender-borrower transaction – in which the lender does not "exceed" its role as a "mere money lender" – **is not the type of relationship** that gives rise to a duty to disclose. *See* Motion to Dismiss at pp. 16–17; *see also, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991) ("However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (collecting cases)); *Mackell v. Wells Fargo Home Mortg.*, 2017 WL 373077, at *7 (N.D. Cal. Jan. 26, 2017) (dismissing the plaintiff's claims for fraud, fraudulent concealment, and negligent misrepresentation because there was no duty to disclose by the defendant-bank). This special framework controls even when a plaintiff attempts to avail itself of the "exclusive knowledge," "active concealment," and "half-truths" duties. In *Hernandez v. Wells Fargo & Company*, for example, the Northern District of California analyzed these circumstances and determined that they did not displace the lender-borrower framework:

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-11-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

> Nonetheless, a financial institution owes no duty to a
> borrower the institution's involvement does not exceed the
> scope of its conventional role a money lender [sic] . . . .
> Here, plaintiff alleges a duty existed because 'Wells Fargo
> stated half-truths' to plaintiffs and '[o]ne who undertakes to
> make a statement must not only state the truth, but may
> not conceal any facts' . . . . **Such facts are insufficient to**
> **demonstrate the necessary intent to give rise to a duty,**
> **especially because defendant was acting in its**
> **conventional role as a money lender.**

*Hernandez v. Wells Fargo & Co.*, 2019 WL 3891342, at \*4 (N.D. Cal. Aug. 19, 2019) (emphasis added) (internal citations omitted) (alteration in original). These concepts are fatal to the Plaintiff's assertion that the three prototypical circumstances supply a basis for Fountainhead's duty to disclose (*see* Opposition at pp. 6–8), and thus are fatal to the fraudulent concealment theory itself.

None of the Plaintiff's cited cases supports a disclosure duty here. *See id.* at pp. 8–9. Indeed, the cases reinforce Fountainhead's position regarding the lender-borrower framework, because they involved situations in which **"special circumstances"** (or other factors inapplicable here) gave rise to a duty to disclose by the financial institution. *F.D.I.C. v. Tarkanian*, 2010 WL 3932074, at \*7 (S.D. Cal. Oct. 5, 2010) (holding that the counterclaimant stated a claim for fraudulent concealment because "[t]he facts alleged support the conclusion that La Jolla Bank's 'involvement in the loan transaction . . . exceed[ed] the scope of its conventional role as a mere lender of money'" (alteration in original)); *Romero v. Countrywide Home Loans, Inc.*, 2011 WL 445956, at \*4 (N.D. Cal. Feb. 3, 2011) (holding that the plaintiffs alleged sufficient facts to support a duty to disclose, in view of the principle that "affirmative representations made **in loan documents** may give rise to

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

-12-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

a duty to disclose relevant information" (emphasis added)).[7] Because the Plaintiff has not pleaded (and cannot plead) the existence of any "special circumstances" or other qualifying factors, these cases are inapposite. Fountainhead did not have any duty to disclose under the lender-borrower framework.

Finally, with respect to the element of reliance, Fountainhead explained that any notions of "justifiable" reliance are implausible for at least two reasons. Motion to Dismiss at pp. 17–18. First, the Plaintiff alleged in the Complaint that it "relied" on Fountainhead's representations in "submitting" its PPP expression of interest on March 28, 2020, but the only emails identified in support of Count I occurred **after** the Plaintiff's submission. *Id.* (citing Cmpl. at ¶ 48). This timeline makes it logically impossible for the Plaintiff to have "relied" on the cited emails to submit its application. *Id.* In any event, Fountainhead fully rebutted the Plaintiff's theory that these emails somehow induced the Plaintiff into believing that it was certain to obtain a loan from Fountainhead. *Id.* at p. 18; *see also* Opposition at p. 14. As is apparent from the complete emails attached to the Motion to Dismiss (*see* Farrell Decl., Exs. 1–3), Fountainhead never promised the Plaintiff a PPP loan or opined about the Plaintiff's chances of obtaining funding. Motion to Dismiss at p. 18. Indeed, Fountainhead kept applicants apprised of the "demand surge" for PPP loans, and of the reality that it might not be feasible for Fountainhead to fulfill every applicant's request, given the backlog of applications. *Id.* The nature and content of Fountainhead's emails belie any notions of reliance, much less the "justifiable" reliance that the Plaintiff must show.

In view of these incurable legal defects, Count I fails as a matter of law, and the Court should dismiss this claim with prejudice.

---

[7]  The *Monaco* case, cited at page 8 of the Opposition, provides little analysis of why the lender had a duty to disclose, but the facts of the case demonstrate that *Monaco* (like *Romero*) involved allegedly misleading representations in formal loan documents. *See Monaco v. Bear Stearns Residential Mortg. Corp.*, 2010 WL 11460004, at *3 (C.D. Cal. May 13, 2010).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1218505.01/LA

**D.    Counts II and III Are Also Legally Defective.**

As explained in the Motion to Dismiss, Counts II and III, for violation of the UCL and FAL, respectively, suffer from many pleading and substantive defects. *Id*. at pp. 18–30. The Plaintiff's Opposition fails to provide any viable legal theory to sustain these claims.

> **i.    The Plaintiff Failed to Plead the Lack of An Adequate Remedy at Law, So the Equitable Statutory Claims Are Subject to Dismissal Under Sonner.**

Fountainhead's threshold argument was that the equitable statutory claims are subject to dismissal, because the Plaintiff failed to plead the lack of an adequate remedy at law. *Id.* at pp. 19–21 (discussing, among other authorities, *Sonner v. Premier Nutrition Corp.*, 2020 WL 4882896 (9th Cir. June 17, 2020)). Counts II and III should be dismissed on this basis alone. In *Sonner*, the Ninth Circuit held that a federal court sitting in diversity jurisdiction "must apply traditional equitable principles before awarding restitution under the UCL . . . ." *Sonner*, 2020 WL 4882896, at *5. Under these principles, the court determined, a plaintiff "must establish that [it] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . ." *Id.* at *7 (collecting cases). Because "the operative complaint [did] not allege that Sonner lack[ed] an adequate legal remedy," and because Sonner sought the same remedy through her legal and equitable claims, the Ninth Circuit affirmed the district court's dismissal of Sonner's UCL claim. *Id.* at *8.

Here, *Sonner* disposes of the Plaintiff's UCL and FAL claims, given the availability of an adequate legal remedy through the fraudulent concealment claim. The Plaintiff, however, urges that "*Sonner* and its reasoning are inapplicable to this case" because: "[h]ere, unlike *Sonner*, Plaintiff is not seeking the same remedies in its different causes of action. UCL and FAL seek restitution, which will likely be what Defendants have received, like commissions on the loans. Fraudulent

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**
1218505.01/LA
-14-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

concealment is seeking damages, what Plaintiffs have lost, likely costs associated with the futile application." Opposition at p. 21. The Plaintiff's position ignores *Sonner*'s holding that a plaintiff must allege the lack of an adequate legal remedy in its complaint (*Sonner*, 2020 WL 4882896, at *8), and it also seriously distorts principles of restitution.

 As Fountainhead explained in the Motion to Dismiss, the only remedies available under Counts II and III are injunctive relief and restitution. Here, there is nothing to "enjoin," because the Plaintiff has alleged that Fountainhead ceased making PPP loans and, in any event, the PPP application window is closed. Motion to Dismiss at p. 20. The Plaintiff never substantively contests this point in the Opposition.

 With respect to restitution, in California it requires that "'money or property [has] been lost by a plaintiff, on the one hand, and that it [has] been acquired by a defendant, on the other.'" Motion to Dismiss at p. 21 n.9 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011)). The Plaintiff, of course, has not alleged that it provided money or property to Fountainhead. *See id.* Instead, the Plaintiff is under the mistaken impression that it can recover "ill-gotten gains" through its statutory claims (Opposition at pp. 21–22), but California courts have consistently rejected this remedy of "non-restitutionary disgorgement" for UCL and FAL claims. *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (4th Dist. 2015). The concept of "restitutionary disgorgement," the only type of restitution theoretically available here to restore the status quo, would replicate the damages remedy, which the Plaintiff describes as **"what Plaintiffs have lost . . . ."** Opposition at p. 21 (emphasis added). Because the Plaintiff is, in fact, "seeking the same remedies in its different causes of action" (*id.*), its attempt to distinguish *Sonner* fails.

 Ultimately, the Plaintiff can point only to a non-binding case from the District of Hawaii involving an unjust enrichment claim, which is inapplicable here because

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-15-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

California courts do not recognize notions of non-restitutionary disgorgement in this context. *See id.* at p. 22 (citing *N.K. Collins, LLC v. William Grant & Sons, Inc.*, 2020 WL 4043976 (D. Haw. July 17, 2020)). The Plaintiff also cites a string of cases, pre-dating *Sonner*, which support the unremarkable proposition that a plaintiff may plead claims in the alternative. *Id.* at n.5. Because *Sonner* is exactly on point and controls the "adequate remedy" issue, the Court should dismiss the Plaintiff's statutory claims, like the district court did in that case.

Even if the Court were inclined to address the merits of Counts II and III, it would find several additional reasons to dismiss these claims.

> ii.    **Count II Fails to State a Claim Under Any Prong of the UCL.**

> a.    **As to the "Unlawful" Prong, This Claim Is Legally Defective Because Fountainhead Did Not Violate the Predicate Laws and Regulations.**

The Plaintiff alleged that Fountainhead committed three predicate acts by violating Rule 2m of the Interim Final Rule, Cal. Fin. Code § 22100(a), and 15 U.S.C. § 52(a). Cmpl. at ¶ 57. Here and in the Motion to Dismiss, Fountainhead presented a detailed analysis of why it did not violate those laws and regulations, and, thus, why the Plaintiff's claim under the "unlawful" prong fails as a matter of law. *See* Motion to Dismiss at pp. 21–25 (citing, among other authorities, *Balzer v. Wal-Mart Stores, Inc.*, 2015 WL 13828418, at *3 (C.D. Cal. Feb. 25, 2015)). In the Opposition, the Plaintiff again invokes Rule 2m, and cites a Ninth Circuit case for the uncontested principle that the UCL allows a plaintiff to enforce an alleged violation of § 22100(a) (the CFL's licensing requirement). *See* Opposition at pp. 15–16, 18 (citing *Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*, 157 F. App'x 959, 963 (9th Cir. 2005)). But these authorities do not obviate the argument, fully briefed by Fountainhead, that there is no liability under the "unlawful" prong unless the defendant has actually violated a predicate law.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-16-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    Most telling is the Plaintiff's response to Fountainhead's argument that it did
2  not violate 15 U.S.C. § 52(a), the federal false advertising law. *See id.* at pp. 16–18.
3  The Motion to Dismiss outlines three separate arguments as to why Fountainhead is
4  not liable under this law. Motion to Dismiss at pp. 22–25. But instead of addressing
5  the position, rooted in case law from within this Circuit, that Fountainhead's emails
6  to the Plaintiff are not "advertisements," the Plaintiff deflects and asks the Court to
7  ignore the very communications that it injected into this litigation. *See* Opposition at
8  p. 17. The Plaintiff's arguments regarding probability of deception are even more
9  conclusory. *See id.* at pp. 16–17. The Plaintiff insists that Fountainhead's statements
10  "were likely to mislead, and did mislead, reasonable consumers" (*id.*), but the
11  Plaintiff glosses over the reality that: (i) none of Fountainhead's communications
12  promised the Plaintiff a loan, (ii) the overwhelming majority of Fountainhead's
13  Tweets contain objective, non-actionable representations (or statements of opinion),
14  and (iii) no "reasonable consumer" would have believed Fountainhead's statements
15  to mean that it was processing PPP applications in a chronological, perfectly
16  sequential "queue." Motion to Dismiss at pp. 23–25. Any one of these defects allows
17  the Court to dispense with the Plaintiff's false advertising theory, and, ultimately,
18  with its claim under the "unlawful" prong.

19          **b.      The Plaintiff's Claim Under the "Fraudulent" Prong**
20                 **Fails Because, Among Other Reasons, Fountainhead**
21                 **Did Not Have a Duty to Disclose.**

22    With respect to the "fraudulent" prong, Fountainhead likewise presented
23  several different arguments demonstrating the many deficiencies with this claim. *Id.*
24  at pp. 25–27. As to the issue of probability of deception, the Plaintiff's main retort is
25  that Fountainhead's analysis is "an improper attempt to supplant the finder of fact,"
26  and that "[i]t is ultimately the provenance of the finder of fact to determine whether
27  [Fountainhead's] representations are likely to deceive the public." Opposition at p.
28  20. However, this is an oversimplification of the issue that fails to address the more

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

-17-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1218505.01/LA

1  specific case law in the Motion to Dismiss that is applicable here. As briefed in the

2  Motion to Dismiss, although probability of deception is typically a fact question, the

3  Court may dismiss claims when it "can conclude as a matter of law that members of

4  the public are not likely to be deceived . . . ." *Warner v. Tinder Inc.*, 105 F. Supp. 3d

5  1083, 1092 (C.D. Cal. 2015) (cited at pages 23 and 26 of the Motion to Dismiss). As

6  discussed above in connection with the Plaintiff's federal false advertising theory,

7  Fountainhead's emails and Tweets were not "likely to deceive" any "reasonable

8  consumers" as a matter of law. Motion to Dismiss at pp. 23–26.

9      More fundamentally, the Plaintiff completely ignores the principle – well-

10  established in California – that there is no liability under the UCL's "fraudulent"

11  prong absent a duty to disclose by the defendant. *Id.* at p. 27 (citing *Berryman v.*

12  *Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (4th Dist. 2007) and *Buller*

13  *v. Sutter Health*, 160 Cal. App. 4th 981, 987 (1st Dist. 2008)). Because

14  Fountainhead did not have a duty to disclose under California's framework for

15  lender-borrower dealings, the Plaintiff cannot maintain its claim under the

16  "fraudulent" prong. The Plaintiff, notably, says nothing about this issue.

17          c.      **The Plaintiff Failed to Properly Plead Its Claim Under**

18                  **the "Unfair" Prong.**

19      Finally, as to the "unfair" prong, Fountainhead explained that the Complaint

20  does not indicate, even nominally, whether the Plaintiff is traveling under the

21  "tethering" test or the "balancing" test. *Id.* at pp. 27–28. The Plaintiff does not

22  dispute that these approaches are an essential element of a claim under the "unfair"

23  prong, as they help courts identify, and define the parameters of, "unfair" business

24  conduct. *See id.* Instead, while advocating that "unfairness" is a fact question

25  (Opposition at p. 18), the Plaintiff simultaneously proceeds to apply both tests,

26  arguing that Fountainhead violated Rule 2m ("tethering" test) and that

27  Fountainhead's conduct was "unscrupulous, unethical, and injurious" without a

28  countervailing benefit to consumers ("balancing" test). *Id.* at p. 19. Because these

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1218505.01/LA

-18-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  allegations (however dubious) are components of the claim under the "unfair"

2  prong, the Plaintiff is required to formally plead them in the Complaint. *See* Motion

3  to Dismiss at p. 27 (citing *Palmer v. Apple Inc.*, 2016 WL 1535087, at *7 (N.D. Cal.

4  Apr. 15, 2016)).

5          **iii.**       **Count III Fails to State a Claim for a Violation of the FAL,**

6                          **for Several Reasons.**

7         Finally, with respect to the FAL claim, the Motion to Dismiss itemizes the

8  many pleading and substantive deficiencies with this count. *Id.* at pp. 28–30. In the

9  Opposition, the Plaintiff only rehashes Fountainhead's communications (Opposition

10  at pp. 20–21), and it completely fails to address Fountainhead's arguments – any one

11  of which is dispositive – that Count III contains improper boilerplate without any

12  factual development, or that Fountainhead's communications to the Plaintiff are not

13  "advertisements" under the FAL, or that the relevant communications are not, in any

14  event, misleading as a matter of law. Motion to Dismiss at pp. 29–30; *see also id.* at

15  pp. 23–26. And, as in other parts of the Opposition, the Plaintiff does not even

16  attempt to address the principle that there is no liability under the FAL absent a duty

17  to disclose. *Id.* at p. 30 (citing *Hodson v. Mars, Inc.*, 891 F.3d 857, 867–68 (9th Cir.

18  2018)). That duty, as discussed above, does not exist here, thus eroding the

19  foundation of the Plaintiff's false advertising theory.

20  **III.**   **CONCLUSION**

21         For all of the reasons discussed here and in the Motion to Dismiss,

22  Fountainhead respectfully requests that the Court dismiss the Complaint, with

23  prejudice. Fountainhead also requests that the Court order any other relief that it

24  believes proper.

25         Under Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other

26  signatories listed concur in this content's filing and have authorized this filing.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

-19-
DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  Dated:  August 31, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**SHUTTS & BOWEN LLP**
200 S. Biscayne Blvd., Ste. 4100
Miami, Florida 33131
Tel: (305) 358-6300
*Attorneys for Fountainhead SBF LLC and*
*Fountainhead Commercial Capital, LLC*

By: _____ */s/ Daniel T. Stabile* _____
Daniel T. Stabile
dstabile@shutts.com
(Admitted *pro hac vice*)

**ALLEN MATKINS LECK GAMBLE**
**MALLORY & NATSIS LLP**
865 S. Figueroa St., Ste. 2800
Los Angeles, California 90017
Tel: (213) 622-5555
*Attorneys for Fountainhead SBF LLC and*
*Fountainhead Commercial Capital, LLC*

By: _____ */s/ Michael R. Farrell* _____
Anthony J. Oliva (Bar No. 123971)
toliva@allenmatkins.com
Michael R. Farrell (Bar No. 173831)
mfarrell@allenmatkins.com
Stacey A. Villagomez (Bar No. 317081)
svillagomez@allenmatkins.com

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1218505.01/LA

-20-

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT