JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELIZABETH M. BYRNES, INC., | ) | Case No. CV 20-04149 DDP (RAOx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| FOUNTAINHEAD COMMERCIAL CAPITAL, LLC, | ) | |
| Defendants. | ) | [Dkt. 40] |

Presently before the court is Defendants Fountainhead Commercial Capital, LLC and Fountainhead SBF LLC (collectively, "Fountainhead")'s Motion to Dismiss Plaintiff's Second Amended Complaint. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I.  Background**

Beginning in March 2020, public health measures necessitated by the outbreak of the coronavirus pandemic had "devastating" effects on small businesses. Second Amended Complaint ("SAC") ¶ 12. In response, the federal government enacted the Coronavirus Aid, Relief, And Economic Security ("CARES") Act, Pub.L. 116-136,

H.R. 748.  SAC ¶ 13.  The CARES Act, among other things, established the Paycheck Protection Program ("PPP"), a $349 billion loan program through which small businesses could obtain forgivable loans backed by the Small Business Administration, but administered by private lenders.  SAC ¶ 14.

On March 27, the day the CARES Act was signed into law, Fountainhead advertised that it would "soon be tackling the loan inquiries lined up in our queue, providing business owners with capital they need within days."  SAC ¶ 17.  The next day, Plaintiff submitted a PPP loan application to Fountainhead for a loan of less than $25,000.  SAC ¶ 28.  That same day, Fountainhead responded with an e-mail stating that Plaintiff was "in the queue," and that "[h]elp is on the way," and asking her to gather certain documentation.  Id.  The next day, Fountainhead told Plaintiff to expect "an invitation to a secure portal for document upload within the next 48 business hours."  SAC ¶ 28.  Fountainhead's message indicated that Plaintiff should prepare to upload documents such as bank statements, payroll reports, rent statements, utility bills, and a "Completed Application."  (Declaration of Michael R. Farrell in Support of Motion; Ex. 2.)  Plaintiff did not receive any document upload invitation.  SAC ¶ 28.

Fountainhead continued to promote PPP loans, encouraging applications and stating that it "hope[d] to make these loans within days."  SAC ¶ 20.  Fountainhead executives made statements touting its advantage over other, bank-based lenders, such as Fountainhead's ability to approve loans "within a few hours."  SAC ¶ 19.  Fountainhead further represented that it "require[d] no[] prior relationship, no special (money-making) criteria, and [was]

processing first come, first serve . . . no prioritization." SAC ¶ 24.

Approximately two weeks after submitting her application and being instructed to gather her documentation, Plaintiff followed up with Fountainhead to confirm the status of her loan. SAC ¶ 29. Fountainhead confirmed that her loan was in the queue and again indicated that Plaintiff would receive access to a document upload portal within 24 to 48 hours. Id. A few days later, however, Fountainhead sent an e-mail stating, "We ask for your patience with us . . . as we process your requests as quickly and responsibly as we can. Should you feel the need to remove yourself from our loan queue and join another lender's list, kindly let us know . . . so we may continue to prioritize our list." SAC ¶ 30.

Plaintiff gathered the requested documents, waited for the opportunity to upload them, refrained from submitting a loan application to other lenders, and made other, related decisions regarding her small business. SAC ¶ 31. Plaintiff never, however, received PPP funding from Fountainhead. SAC ¶ 3.

Plaintiff alleges, on behalf of a putative class of California businesses that applied for PPP loans, that Fountainhead's representations to California businesses were false and misleading. SAC ¶ 16. Plaintiff alleges, for example, that Fountainhead was not even licensed to engage in lending activities in California until April 21 and had not secured any funding prior to that time, and therefore could not possibly have extended loans "within days." SAC ¶¶ 16, 22. Plaintiff also alleges that, contrary to its representations, Fountainhead did prioritize favored customers and higher-value loans that would yield higher fees to Fountainhead

3

than would relatively small loans, such as that sought by Plaintiff. SAC ¶ 32. Plaintiff's SAC alleges state law claims for fraudulent concealment, fraudulent deceit, unfair business practices, and false advertising. Fountainhead now moves to dismiss all claims.

## II. Legal Standard

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Plaintiffs must allege "plausible grounds to infer" that

their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.    Fraudulent concealment

"The elements of fraudulent concealment are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." Burch v. CertainTeed Corp., 34 Cal. App. 5th 341, 348 (2019). As it did in moving to dismiss Plaintiff's First Amended Complaint, Fountainhead argues that Plaintiff has failed to adequately plead that Fountainhead owed her any duty to disclose.

As discussed in this Court's earlier Order, a duty to disclose may arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc., 233 Cal. App. 4th 803, 831 (2015). The latter three of these circumstances, however,

5

"presuppose the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." Burch, 34 Cal.App.5th at 349. "This relationship has been described as a 'transaction,' such as that between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement." Id. at 349-50; see also LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997) ("[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties . . . .")

Plaintiff's SAC, unlike the FAC, alleges that "Plaintiff and Defendant were parties transacting business in order to enter into a contractual, borrower-lender relationship." (SAC ¶ 52.) As an initial matter, however, Plaintiff has not pleaded any facts that support this allegation. Plaintiff alleges that she "submitted a PPP loan application" and received a confirmation e-mail stating, "We've received your loan app . . . ." (SAC ¶ 28.) The e-mail Plaintiff received, however, does not say that. Rather, it states, "We've received your loan request." (Farrell Decl., Ex. 1 (emphasis added)). Furthermore, the document portal "invitation" Plaintiff received does not refer to any previously-submitted application. Rather, the e-mail indicated that the portal would allow the upload of documents Fountainhead would need to process a loan. (Farrell Decl., Ex. 2.) Those documents included a "Completed Application SEE ATTACHED." (Id.) The e-mail further indicated that a PDF of the application would need to be downloaded "before completing." (Id.) This Court cannot, therefore, assume the truth of Plaintiff's allegation that she submitted a loan

6

application, let alone her conclusory allegation that the parties entered into a borrower-lender relationship or engaged in any other transaction.

Even assuming Plaintiff had adequately alleged the existence of a borrower-lender relationship, her fraudulent concealment claim fails. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991). A duty to a borrower may arise, however, under certain circumstances. See Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 945-946 (2014). To determine whether such a duty exists, courts balance the non-exhaustive factors set forth in Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958). See, e.g., Welte v. Wells Fargo Bank Nat'l Ass'n, 189 F. Supp. 3d 965, 973 (C.D. Cal. 2016); Newson v. Countrywide Home Loans, Inc., No. C 09-5288 SBA, 2010 WL 4939795, at *5 (N.D. Cal. Nov. 30, 2010); Kemp v. Wells Fargo Bank, N.A., No. 17-CV-01259-MEJ, 2017 WL 4805567, at *6 (N.D. Cal. Oct. 25, 2017); Pimentel v. Wells Fargo Bank, N.A., No. 14-CV-05004-EDL, 2016 WL 8902601, at *7 (N.D. Cal. Dec. 6, 2016); Jacobik v. Wells Fargo Bank, N.A., No. 17-CV-05121-LB, 2017 WL 5665666, at *9 (N.D. Cal. Nov. 26, 2017). Those factors include "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy

7

of preventing future harm." Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850, 865 (1968) (quoting Biakanja, 49 Cal. 2d at 650).

Here, a balancing of the Biakanja factors reveals that Fountainhead owed no duty to Plaintiff. The first factor is not particularly pertinent here, where a direct borrower-lender relationship exists. Compare Welte, 189 F. Supp. 3d at 974-975. More importantly, the remaining factors tilt strongly against the existence of a duty. First, the only specific harms alleged are "the loss of use of money" and harm Plaintiff suffered "by refraining from applying elsewhere thereby losing priorty and further delaying receipt of any monies needed to fund her business." (SAC ¶ 54.) Plaintiff, of course, was not guaranteed to have her loan application approved, or otherwise entitled to any "use of money." Furthermore, given the preliminary nature of the communications between the parties, it was not foreseeable that Plaintiff would put all of her eggs in the Fountainhead basket on the basis of her loan "request," made in response to a tweet stating that Fountainhead would be "soon be tackling the loan inquiries lined up in our queue."[1] It is far from certain that Plaintiff suffered any injury, as she does not allege that she was unable to obtain a loan from another source or how much of a delay she suffered as a result of Fountainhead's conduct. Nor does Fountainhead's alleged conduct seem overly blameworthy. Although Fountainhead did allegedly misrepresent that it would allow

---

[1] For similar reasons, even if Fountainhead did owe a duty to Plaintiff, she has not adequately allege that she justifiably relied upon Fountainhead's relatively innocuous non-disclosures. See 625 3rd St. Assocs., L.P. v. Alliant Credit Union, 633 F. Supp. 2d 1040, 1050 (N.D. Cal. 2009).

Plaintiff to upload documents, including a loan application, it also acknowledged that it was "somewhat overwhelmed" and was experiencing delays in implementing a novel loan program, and specifically raised the possibility that Plaintiff might want to pursue a loan with another lender. (Farrell Decl., Ex. 3.) And, in light of the expiration of the PPP program, there is no danger of future harm. Thus, even assuming the existence of a borrower-lender relationship between Plaintiff and Fountainhead, the latter owed Plaintiff no duty of disclosure. Accordingly, Plaintiff's fraudulent concealment claim is dismissed, with prejudice.

B. Fraudulent Deceit

The SAC, unlike the FAC, includes a cause of action for fraudulent deceit. Fountainhead contends that this claim must be dismissed because it is premised upon allegations made upon information and belief, and therefore cannot satisfy the heightened pleading requirements of Rule 9(b).[2] "In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010). "Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded." Id.; see also McFarland v. Memorex Corp., 493 F. Supp. 631, 639 (N.D. Cal. 1980) ("Even though this standard permits information-and-belief pleading, it requires that a plaintiff

---

[2] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

9

allege sufficient detail to demonstrate that his complaint is grounded in some facts.").

Here, there is no factual foundation for Plaintiff's allegations, made upon information and belief, that Fountainhead (1) prioritized large loans that would yield high fees, and (2) did not have adequate funding. (SAC ¶ 59.) At least one of Plaintiff's fraudulent deceit allegations, however, is accompanied by factual details. Plaintiff's allegation, made on information and belief, that Fountainhead was initially not licensed to make loans is supported by a factual allegation that Fountainhead's license had been revoked in 2019, and was not reinstated until April 21, 2020. (SAC ¶ 16.) The lack of license claim, therefore, is alleged with sufficient particularity.

Fountain also argues, however, that Plaintiff fails to allege several elements of a fraudulent deceit claim. The court agrees. "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Ct., 12 Cal. 4th 631, 638, 909 P.2d 981, 984–85 (1996) (quoting 5 Witkin, Summary of Cal.Law (9th ed. 1988) Torts, § 676, p. 778). Even assuming the first two elements are met, Plaintiff does not adequately allege that Fountainhead intended to defraud Plaintiff. "[A] plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." Hsu v. OZ Optics Ltd., 211 F.R.D. 615, 620 (N.D. Cal. 2002) (discussing promissory fraud claim) (emphasis original). "A

10

suit for fraud and deceit will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise." <u>Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.</u>, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000). "The non-performance of a promise alone will not support a finding of promissory fraud." <u>UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.</u>, No. CV143466MMMJPRX, 2015 WL 12746208, at *14 (C.D. Cal. Oct. 30, 2015). Plaintiff makes almost no attempt to argue that the intent element is satisfied here, asserting only that intent can be inferred because Fountainhead represented "that it would take certain actions and then actually act[ed] in the complete opposite." (Opp. at 13:18-19.) As discussed above, Plaintiff has not adequately alleged that Fountainhead, which acknowledged that it was overwhelmed, prioritized large loans. The fact that Fountainhead did not process Plaintiff's request does not suggest an intent not to do so, as opposed to an inability to do so.

Furthermore, as discussed above, Plaintiff has not adequately alleged that her reliance upon Fountainhead's alleged misrepresentations was justifiable.[3] Fountainhead's tweets and representations, such as that Fountainhead would "soon be tackling the loan inquiries lined up in our queue," were innocuous or, at most, promises of future performance. Fountainhead never represented that it had received or was processing a loan application, but rather only that it had received Plaintiff's "loan request." Any decision to forego other loan options was simply not

---

[3] See note 1, above.

11

reasonable under the circumstances.  Although reasonableness is often a question of fact, "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1991).  Such is the case here.

C. Remaining Claims

Plaintiff's Third and Fourth Causes of action allege claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., respectively. Claims under both the UCL and FAL are equitable in nature. Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty., 9 Cal. 5th 279, 326, 462 P.3d 461, 488 (2020); see also Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017). Fountainhead contends that, under the Ninth Circuit's decision in Sonner v. Premier Nutrition Corp., 971 F.3d 834, 837 (9th Cir. 2020), Plaintiff cannot bring these equitable claims because she has not sufficiently alleged that she lacks an adequate remedy at law.

In Sonner, the Ninth Circuit held that, regardless of state law, a federal court sitting in diversity is bound by traditional federal equitable principles. Id. at 842, 845. The court further held that among those principles, consistent with California doctrine, is the requirement that a plaintiff establish that she lacks an adequate remedy at law before pursuing equitable restitution. Id. at 844.

Plaintiff's SAC, unlike the FAC, alleges, in the alternative, that she lacks an adequate remedy at law.  (SAC ¶¶ 72, 79.)  Beyond that, however, Plaintiff makes no effort to allege, or explain in

12

her Opposition, why her legal remedies are or may be inadequate. Several courts have dismissed equitable claims pursuant to Sonner under similar circumstances. As one court explained, "[t]he issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, Sonner holds that it does not." Sharma v. Volkswagen AG, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021); see also Anderson v. Apple Inc., 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020); In re California Gasoline Spot Mkt. Antitrust Litig., No. 20-CV-03131-JSC, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021); Shay v. Apple Inc., No. 20CV1629-GPC(BLM), 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021); Watkins v. MGA Ent., Inc., No. 21-CV-00617-JCS, 2021 WL 3141218, at *17 (N.D. Cal. July 26, 2021). Here, absent any indication in the SAC or Plaintiff's arguments how Plaintiff's legal arguments are or may be inadequate, Plaintiff's equitable claims must be dismissed.

**IV. Conclusion**

For the reasons stated above, Fountainhead's Motion to Dismiss is GRANTED. Plaintiff's Second Amended Complaint is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: November 24, 2021

DEAN D. PREGERSON
United States District Judge